JOSEPH DUBOIS
*vs.*
MAINE EMPLOYMENT SECURITY COMMISSION

MARIE A. REMILLARD
*vs.*
MAINE EMPLOYMENT SECURITY COMMISSION

Kennebec.    Opinion, April 25, 1955.

*Simon Spill*, for plaintiff.

*Frank G. Harding, Attorney General,*
*Milton Bradford, Asst. Atty. Gen.,* for State.

SITTING: FELLOWS, C. J., WILLIAMSON, TIRRELL, WEBBER, BELIVEAU, TAPLEY, JJ.

WEBBER, J. These two cases arise out of claims made for benefits under the Maine Employment Security Law. As both cases raise the same legal issues, they have been heard and may be decided together for convenience.

The claimants here were formerly employees of the Bates Manufacturing Company and the Pepperell Manufacturing Company respectively, and are members of the Textile Workers Union of America, C. I. O., which is the bargaining agent as to Labor-Management relations in both plants. The essential facts are not in dispute. During the negotiations preliminary to a contract between the Union and the Employers in 1953, the Union proposed a conventional pension plan for the Employees. The Employers sought to avoid certain expenses of clerical record maintenance and offered as a compromise substitute the plan of lump sum retirement payment which finds expression in the existing contract. Article XXVIII of the contract entitled "Retirement Separation Pay" provides as follows:

"The Employer will pay retirement separation pay to employees who, having attained the age of

sixty-five, voluntarily retire from the employment in the mill and have at the time of their retirement completed fifteen (15) years of service in the mill with an average employment of one thousand (1,000) hours or more for each service year. The amount of the retirement separation pay shall be one week's pay for each service year, with a maximum of twenty weeks' pay.

A week's pay for an hourly worker shall be forty times his hourly rate of pay and for a piece or incentive worker it shall be forty times his average straight time hourly earnings, exclusive of overtime for the Social Security quarter next prior to the quarter in which he retires."

There is no dispute between the contracting parties as to their intention which was to provide a practical and relatively inexpensive substitute for a conventional pension plan, but which was to partake of most of the attributes of a pension plan and which might with some accuracy be described as a lump sum pension. In common with most conventional pension plans, it carried the usual requirements that the claimant must be advanced in years, must have rendered long and continuous service to his employer, and would receive an amount directly related to his earning rate.

Both claimants qualified for "Retirement Separation Pay." Each was experiencing difficulty in doing his usual work as the result of age and infirmity. Each sought from his employer some form of lighter work which would be within the scope of his physical capacity, but no such work was available although it is apparent that each employee was highly regarded by his respective employer. Accordingly, each employee elected to retire and accept the lump sum payment provided by contract. Both employees seasonably registered with the Commission as claimants for unemployment benefits, made themselves available for work within their capacities, and independently made unsuccessful efforts to find suitable employment.

The Commission denied benefits in each case on two grounds, (1) that these claimants could not be deemed "totally unemployed" as required by the Law, and (2) that the lump sum payments constituted "dismissal wages" disqualifying the claimants for benefits. This decision was reviewed in the Superior Court pursuant to the provisions for judicial review (now R. S., 1954, Chap. 29, Sec. 16, Subsec. IX) and there reversed. Exceptions thereto raise the legal issues for our consideration.

Sec. 13, Subsec. II of the Act *(supra)* provides for benefits to be paid to "each eligible individual who is totally unemployed in any week." Sec. 3, Subsec. XVII provides in part: "A. An individual shall be deemed 'totally unemployed' in any week with respect to which no wages are payable to him and during which he performs no services."

Obviously these claimants performed no services during the weeks immediately following their retirement, but they must also show that no wages were paid to them "with respect to" those weeks, and upon this issue the Commission contends that they failed to qualify. Under the contract formula, one of these claimants received the equivalent of eighteen weeks' pay based on eighteen years of employment, while the other claimant received the equivalent of twenty weeks' pay, the maximum allowable, based on many more than twenty years of employment. The Commission contends that these payments were remuneration in the form of wages properly and legally allocable to, and paid "with respect to," the eighteen and twenty weeks respectively immediately following the separation from work. Neither the research of able counsel nor our own has disclosed any case in any jurisdiction squarely deciding this issue or dealing with a modified or lump sum pension plan such as is here involved, and it is presently our understanding that the case is one of novel impression.

We do not think these lump sum payments were "wages" paid "with respect to" the weeks following separation. Sec. 3, Subsec. XIX provides in part, " 'Wages' means all remuneration for personal services including commissions and bonuses and the cash value of all remuneration in any medium other than cash." No personal services were performed after retirement. Thus it follows that if the payment was for personal services, it was necessarily for past personal services without any relationship to the weeks following retirement, but it does not seem to us that the payment was for "personal services" at all in the sense that the Legislature used the phrase in defining "wages." The employee had for many years performed daily assigned tasks which made up the manual routine of his job. For this he had been fully paid week by week the "wages" which he earned by this "personal service." Now upon retirement, having attained the age of at least sixty-five years, and having worked at least fifteen years, he received something more which is called "Retirement Separation Pay." This is of a somewhat different character. It is a recognition and reward for certain intangibles which are of very real worth and value to the employer who desires a stable labor force. These intangibles have to do with the long continuation of the employee's service to, and cooperation with, his employer, his faithfulness, loyalty and dependability, and the relative freedom from interruption of that relationship. There is also here a recognition of the fact that the employee has in a sense grown old in the service of a single company. Such employees set an example for younger employees which the employer has reason to hope may be emulated. They tend to create stability and diminish such problems as job training and irresponsibility which constantly harass management. Here is recognition then of both a quantity and a quality of service. It is just such a concept which underlies the conventional pension plan and the Commission concedes that it does not construe the re-

ceipt of a conventional pension as disqualifying the beneficiary for unemployment benefits. It was obviously the intent of the Employers and the Union here to provide such a reward for intangibles in the form of a modified pension plan. Such plans, where they are financially possible and practicable for the parties to labor-management contracts, tend to foster good will and sound employer-employee relations. The construction put upon the Act by the Commission would tend to destroy their efficacy and we see nothing which directly or indirectly suggests that such was the intention of the Legislature.

We think the Commission has taken too literally the use of the word "weeks" in the contract formula used to compute the lump sum payment. It has assumed that the reference must be to some particular weeks, specifically the weeks immediately following retirement. The manifest purport of the formula is otherwise. Properly interpreted, the formula produces an arbitrary lump sum reward for the quality of the whole service of the employee, a sum which is fixed in a range of from fifteen to twenty times the weekly pay received in the last week of that service. The payment is not related or made "with respect to" any particular weeks, either past or future. It is doubtful if the problem would have arisen if the contract had established some arbitrary fixed sum such as $1,000 rather than to provide a computation by formula, yet the intention would have been the same.

"It is safe to assert that pension payments are not wages within the meaning of the Law, * * * * and that their receipt will not disqualify an employee who meets the other requirements of the Law." *Keystone Mining Co.* v. *Unemployment Comp. Bd. of Rev.*, 167 Pa. Super. 256, 75 A. (2nd) 3 at 5. In *Krauss* v. *A. & M. Karagheusian, Inc.*, 13 N. J. 447, 100 A. (2nd) 277, where claimant received a monthly pension, the court seems to have assumed that

such conventional pension payments would not disqualify and the case was decided on other issues. The Commission, however, appears to place great reliance on the case of *Kneeland* v. *Adm. Unemployment Comp. Act,* 138 Conn. 630, 88 A. (2nd) 376, in which claimant received a conventional weekly pension, and the court held that he was thereby disqualified for benefits. The case, however, is readily distinguishable. The Connecticut law contains a provision that a claimant shall be ineligible for benefits "during any week with respect to which the individual has received or is about to receive remuneration in the form of * * * * *any payment by way of compensation for loss of wages.*" (Emphasis supplied.) The court found that pension payments fell within this category. Whether we would find the reasoning of this decision sufficiently compelling to adopt it if occasion should arise, we need not determine here. Suffice it to say that no such provision appears in our Maine Law. We note the following at page 377 of 88 A. (2nd): "A pension is a 'stated allowance or stipend made * * * * in consideration of past services or of the surrender of rights or emoluments, to one retired from service.' Webster's New International Dictionary (2nd Ed.). *It is not wages as that word is used in our Unemployment Compensation Act.* Wages are there defined as 'all remuneration for employment' * * * *. When a man is retired, his employment ceases. Anything paid to him on account of his retirement *is not remuneration for employment.*" (Emphasis supplied.)

In *Western Union Tel. Co.* v. *Texas Emp. Com.,* 243 S. W. (2nd) (Tex.) 217, where an employee's job was abolished and by Union contract the employee received lump sum severance pay, it was held that the payment was pursuant to the contract and was earned during the entire period of employment. Thus it was not paid "with respect to" the weeks following separation.

We conclude that the first ground relied upon by the Commission is untenable and that in the weeks following separation these claimants were "totally unemployed," and were then neither performing any personal services nor receiving any wages or remuneration "with respect to" those weeks.

The second ground relied upon by the Commission relates to the legal interpretation of the phrase "Dismissal wages." Sec. 15 provides in part that, "An individual shall be disqualified for benefits: * * * * V. For any week with respect to which he is receiving or has received remuneration in the form of: A. * * * * dismissal wages or wages in lieu of notice." Sec. 1, Subsec. IX of the Regulations promulgated by the Commission defines the phrase "dismissal wages" as used in Sec. 15 above as "any remuneration, accrued or otherwise, paid or payable to an individual at the time of his separation from work." The Commission determined that the "Retirement Separation Pay" received by these claimants constituted "dismissal wages" as defined by the Regulation.

Sec. 5 of the Act empowers the Commission to adopt, amend or rescind such regulations as may be required in the administration of the Act. That the Commission may not exert its regulatory power to change, modify, extend or limit any Law enacted by the Legislature is undoubted. 42 Am. Jur. 358 (Pub. Adm. Law) Sec. 53. In *Anheuser-Busch, Inc.* v. *Walton, et al.*, 135 Me. 57, we said at page 66: "No principle is more firmly imbedded in our concept of government than that the laws under which we live shall be enacted by the people or by their representatives in legislature assembled"; and at page 67, "Its (the Commission's) power to make rules and regulations extends only to such details of administration as are necessary to carry out and enforce the mandate of the legislature."

The word "dismissal" as used in the phrase cannot be arbitrarily disregarded. It connotes an affirmative action on the part of the employer in initiating the separation. The verb "dismiss" as related to employment has been defined as "to send or remove from office, services or employment; discharge." Webster's New Collegiate Dictionary. Where there is mere passive acquiescence by the employer in a voluntary retirement pursuant to a contractual retirement plan such as occurred here, there is no "dismissal" within the purview of the Act.

Where an employee was displaced by technological changes which eliminated his job but by Union contract was entitled to several options including "severance pay" payable in a lump sum, the employee was deemed eligible for unemployment benefits. The Act contained a similar disqualifying feature for "dismissal payment or wages in lieu of notice," but the court did not view the severance pay as a "dismissal payment." *Ackerson* v. *Western Union Tel. Co.*, 48 N. W. (2nd) (Minn.) 338. In a similar situation, the court in *Krupa et al.* v. *Western Union Tel. Co.*, 90 Ohio App. 90, 103 N. E. (2nd) 784, in a split decision, held that the lump sum severance pay was "remuneration in lieu of notice" which disqualified the claimant for benefits. In so holding, the majority relied upon "some evidence from which it may be inferred that the severance pay was remuneration for the period of unemployment" after the separation. In a vigorous and well reasoned dissent, Carpenter, J., pointed out that there was no such evidence, but that pursuant to the Union contract claimant was being compensated, not for her work for which she had been paid wages, but for the loss of seniority and pension rights which she had built up much as one builds up the cash surrender value of a policy of a reserve life insurance company. He concluded that such a payment would not be disqualifying.

In *Schenley Distillers* v. *Review Bd. of Ind. Emp. Sec. Div.*, 123 Ind. App. 508, 112 N. E. (2nd) 299, the lump sum payment was a "termination payment in lieu of notice," and thus disqualifying. At page 302 of 112 N. E. (2nd) the court said: "The term 'termination payments *in lieu of notice*,' has an accepted usage as follows:

> 'Dismissal notice may be defined as advance notice given by the employer of his intention to dismiss the employee. Sometimes in lieu of such notice the employee's salary is paid for the period which would otherwise be covered by the notice. * * * *.' 147 A.L.R. 154."

Such dismissal payments are quite distinguishable from either conventional pension payments or "Retirement Separation Pay" such as we are here considering.

The Commission cites the case of *Fazio* v. *Unemployment Com. Bd. of Review*, 164 Pa. Super. 9, 63 A. (2nd) 489. In this case, however, the employer dismissed the employee and, although not legally required to do so, gave him a check for his pay for the two months following the separation. The check bore the notation "Salary for February and March." The court held this dismissal payment disqualified the claimant from benefits for the period covered by the check under the wording of the Pennsylvania Act. We see little or no resemblance between this situation and the one at Bar in which there was no dismissal and no allocation by the parties themselves of the lump sum payment to the weeks following separation.

The decree of the learned justice below stated: "It is the conclusion of this court that the regulatory definition of 'dismissal wages' goes beyond the legislative intent in the Act, is inconsistent with the terms of the Act it purports to supplement administratively, and is therefore invalid, insofar as it includes retirement separation pay under the facts of the instant cases." With this conclusion we agree.

The Commission suggests that if the basic legal issues already discussed should be decided in favor of the claimants, the matter should be remanded for further proceedings before the Commission to determine whether or not the claimants complied with all requirements as to "availability for work." We can conceive of cases in which a manifest lack of essential evidence might make such a remand essential, but we would be most reluctant to lend encouragement to any form of procedure which might tend to produce piecemeal judicial review and an unnecessary duplication of costly and time-consuming litigation. The Commission has a duty to determine all of the issues which are properly and adequately raised by the evidence in order that one judicial review may effectively terminate the case. In the instant cases, the Commission had sufficient evidence before it upon which to make a determination of "availability." If it desired further investigation or corroboration, it had ample opportunity and facilities for procuring the same. Sec. 5, Subsec. XIV provides in part: "Upon the motion of any party to the review, the court may order additional testimony or evidence to be offered and upon the basis of all the evidence before him shall determine the issues." Apparently the Commission did not deem it necessary to make such a motion. The Commission seems arbitrarily, albeit sincerely, to have concluded that its determination of the legal issues now before us was essentially correct and not vulnerable to judicial review and no necessity existed for considering seriously the question of "availability." In this view, it now appears that the Commission was mistaken. A remand at this time, if it resulted unfavorably to claimants, would necessitate a further petition by them for another judicial review. Such practice is unduly burdensome to parties and should be avoided if possible.

Sec. 14 provides in part: "An unemployed individual shall be eligible to receive benefits with respect to any week

only if the commission finds that: * * * * II. He has registered for work at, and thereafter continued to report at, an employment office in accordance with such regulations as the commission may prescribe, * * * *; III. He is able to work and is available for work and * * * * is himself making a reasonable effort to seek work at his usual or customary trade, occupation, profession or business or in such other trade, occupation, profession or business as his prior training or experience shows him to be fitted or qualified; * * * *."

Sec. 15 provides in part: "An individual shall be disqualified for benefits: * * * * III. If the Commission finds that he has failed, without good cause, either to apply for available, suitable work when so directed by the employment office or the commission or to accept suitable work when offered him. * * * *. A. In determining whether or not any work is suitable for an individual, the commission shall consider the degree of risk involved to his health, safety and morals, his physical fitness and prior training, his experience and prior earnings, his length of unemployment and prospects for securing local work in his customary occupation, and the distance of the available work from his residence."

The Commission's findings of fact, when supported by any credible evidence, are conclusive. Judicial review is limited to the correction of errors of law. When the Commission decides facts contrary to all of the credible evidence in the case, it has committed an error of law. *N. E. Tel. & Tel. Co.* v. *PUC*, 148 Me. 374; *Central Maine Power Company* v. *PUC*, 150 Me. 257. When no dispute as to the facts exists or is possible upon all the evidence, the question becomes one of law. So here there is no dispute as to the facts. The employers, the union, the claimants and the representatives of the Commission all agree that the claimants were no longer physically able to perform their customary tasks, but

they were able and anxious to perform lighter work. They were seeking work from their employers and from others. They were registered and reporting regularly at the employment office and had not refused any offer of employment. For the time being, no suitable jobs were available but they evinced a genuine attachment to the labor market. "The test is met if it appears that the 'individual is willing, able and ready to accept suitable work which he does not have good cause to refuse, that is when he is genuinely attached to the labor market.' * * * * The determination entails primarily a probe of the claimant's good-faith intention to work * * * *." *Krauss* v. *A. & M. Karagheusian, Inc.*, *supra*, at page 282. Where a condition precedent to the receiving of a pension is that the recipient withdraw from all gainful labor, he is of course not "available" for employment and is disqualified for benefits. See *Keystone Mining Co.* v. *Unemployment Comp. Bd. of Rev.*, *supra*, but no such condition was imposed in the cases before us. In *Campbell Soup Co.* v. *Bd. of Rev.*, 13 N. J. 431, 100 A. (2nd) 287, the claimant was compelled by the terms of a collective bargaining agreement to retire on pension at age 65. He was held to be involuntarily unemployed and entitled to benefits where he was genuinely attached to the market for common labor, even though contractually barred from employment by the pensioning employer. With respect to the "availability" of a man of his years, the court said at page 291 of 100 A. (2nd): "But the witness (employment officer) also testified that unskilled workers 65 years or older found it 'very difficult' to find jobs. This, however, is an inadmissible consideration in the inquiry whether there is a labor market for skills of the type being offered by the claimant. The claimant's age is properly a consideration upon the issue of his availability only as it relates to his ability to work, or is tied to restrictions which materially limit his capacity for employment. The primary determinant of the existence of a labor market is whether there is a

market in the geographical area in which the claimant is willing to work for the services which he is able to perform." In the instant cases, we think the claimants were, if anything, more "available" as they were not barred from seeking and did in fact seek other work from their employers as well as in the general labor market. Claimants may not impose unreasonable restrictions which in effect destroy the market for their services. *Goings* v. *Riley*, 98 N. H. 93, 95 A. (2nd) 137; *Robinson* v. *Maryland Emp. Sec. Bd.*, 97 A. (2nd) (Md.) 300. There is no suggestion in the evidence here that these claimants did not meet these tests adequately.

We therefore conclude that the uncontroverted evidence requires determination that these claimants, having voluntarily left their employment, not merely to secure "Retirement Separation Pay," but for good cause, and having demonstrated their ability and willingness to accept suitable work from their original employers or in the general labor market, were "available" for work within the meaning of the Act. Not being otherwise disqualified, they were eligible for benefits. A contrary finding on the issue of "availability" would constitute an error of law as being unsupported by any evidence, and there is therefore no occasion to remand these cases to the Commission for further consideration.

The entry will be,

*Exceptions overruled.*