Ottielee J. PAIGE

v.

**MAINE EMPLOYMENT SECURITY COMMISSION.**

Supreme Judicial Court of Maine.

Sept. 6, 1978.

Sunenblick, Fontaine & Reben by Donald F. Fontaine (orally), Portland, for plaintiff.

Patricia M. McDonough (orally), Asst. Atty. Gen., Augusta, for defendant.

Before McKUSICK, C. J., and POMEROY, WERNICK, ARCHIBALD, DELAHANTY, GODFREY and NICHOLS, JJ.

POMEROY, Justice.

This appeal arises from a claim for unemployment benefits brought by appellant.

Ms. Paige had been employed for about a year as a "*house supervisor*" in an extended care facility for retarded adults run by her employer, Abilities and Goodwill, Inc. (Goodwill). Her duties included teaching and attending to the "*clients*" as well as various household chores. Within three months of her transfer in March of 1976 to another, similar facility also run by Goodwill, Ms. Paige resigned.

After her resignation, Ms. Paige sought unemployment benefits from the Portland office of the Maine Department of Manpower Affairs. A deputy of that office determined that Ms. Paige was disqualified from receiving benefits from June 5, 1976 to August 28, 1976, or until she had earned $600, whichever occurred first. That determination was based on a finding that she had left her employment voluntarily without good cause related to her employment. *See* 26 M.R.S.A. § 1193(1)(A) (1964).

Ms. Paige appealed that decision to an appeal examiner within the Department. After a hearing, the examiner also concluded that benefits should be denied and affirmed the decision of the deputy. Ms. Paige thereupon appealed to the Maine Employment Security Commission, (Commission) which in turn affirmed the decision of the appeals examiner.

Following rejection of her appeal by the Commission, Ms. Paige instituted this suit

in the Superior Court, Kennebec County, pursuant to 26 M.R.S.A. § 1194(9) (1964) and Rule 80B, M.R.Civ.P. From an adverse decision in the Superior Court, Ms. Paige appeals.

We sustain the appeal.

After the hearing before the appeal examiner, he made the following factual findings: 1. that the conditions of work in the facility to which Ms. Paige had been transferred *"had not changed"*; 2. that Ms. Paige had *"condoned"* the conditions at the second facility for three months; 3. that her fear that remaining on the job would endanger her health and welfare was unfounded; and 4. that there was no abnormal risk presented by her job to her health and safety. Accordingly, the examiner held that Ms. Paige had left her job *"voluntarily without good cause attributable to her employment."* The examiner further found that she *"may have good personal reasons for leaving, but such leaving is not attributable to the employment or the employer, within the meaning of Sections 1193–1 and 1221–3 of the Employment Security Law."* These findings were later adopted by the Commission.

Ms. Paige now contends that these findings were not supported by credible evidence and that the facts clearly demonstrate that she had *"good cause"* for resigning within the meaning of 26 M.R.S.A. § 1193 (1964). She also contends that the Commission failed to make all the necessary findings of fact and did not fulfill its duty to develop a full and complete record.

We find Ms. Paige's initial contention dispositive and, therefore, need not reach her second argument.

26 M.R.S.A. § 1193(1)(A) provided at the time Ms. Paige appeared before the Commission that:

*An individual shall be disqualified for benefits:*

*1. Voluntarily leaves work.*

*A. For the week in which he left his regular employment <u>voluntarily without good cause attributable to such employment,</u> or to a claimant who has voluntarily removed himself from the labor market where presently employed to an area where employment opportunity is less frequent, if so found by the commission, and disqualification shall continue for 12 weeks immediately following such week or until claimant has earned 8 times his weekly benefit amount whichever occurs first. Leaving work shall not be considered voluntary without good cause when it is caused by the illness or disability of the claimant and the claimant took all reasonable precautions to protect his employment status by having promptly notified his employer as to the reason for his absence and by promptly requesting reemployment when he is again able to resume employment;* (later amended by P.L.1977, c. 472, §§ 1–2) (emphasis added)

At the hearing before the appeal examiner Ms. Paige testified that the causes of her dissatisfaction with her employment following her transfer to the second facility were, in essence, her irregular working hours and the violence of the *"clients"* under her supervision. In regard to the working hours, Ms. Paige testified that she generally worked a 40–44 hour week. She rarely, however, had weekends off, despite the fact that she claimed that she had been originally told that she would have some weekends to herself. In fact, she was given Sundays off only after complaining to Mr. Tank, the Rehabilitation Director. Moreover, Ms. Paige alleged that at least once a week she was required to work a double shift with only a few hours of rest in a 24-hour period. She also complained of having to attend frequent staff meetings at inconvenient times, for which she was compensated, only after complaining to her supervisor.

In regard to the violence of the *"clients"*, Ms. Paige testified that one *"client"* had threatened to kill her and that another had tried to kiss her while restraining her physically. She also testified that she was aware of similar acts of violence directed at both employees and *"clients"* of the facility. Finally, there was testimony to the effect that most of the people who had worked with her had quit at the same time; that she had been replaced by a male supervisor

who, allegedly, could control the *"clients"* better; that her doctor had told her that her health might suffer because of her employment; and that, although she had complained to her supervisors on several occasions, nothing had been done to change the working conditions.

It is important to note that Ms. Paige's testimony stands uncontradicted and, corroborated, at least in part, by a fellow employee.

■ In examining the sufficiency of evidence to support factual findings by the Maine Employment Security Commission, we are guided by the principle that the findings of the Commission will be upheld if they are supported by any competent evidence. *Moore v. Maine Department of Manpower Affairs*, Me., 388 A.2d 516 (1978); *Dubois v. Maine Employment Security Commission*, 150 Me. 494, 114 A.2d 359 (1955). A thorough review of the record convinces us that the Commission's findings are unsupported by any competent evidence. We shall address each of the Commission's findings in turn.

The Commission found as a fact, that the conditions at the facility to which Ms. Paige was transferred were, for all intents and purposes, the same as those at the prior facility in which she worked. We find nothing in the record to support this conclusion. In fact, Ms. Paige's uncontradicted testimony is to just the opposite. She testified that at the prior facility, she had been responsible for fourteen *"clients"*, whereas at the second facility she was responsible for eighteen, a significant difference. Further, the working schedules at the two facilities were notably different. At the prior facility she was required to work weekdays and *every other weekend*. At the new facility, however, she testified that at times she worked a double shift with only a few hours in between, in addition to working every weekend. In the absence of *any* competent evidence to support it, we cannot

uphold a finding that these changes were insufficient to show a change in conditions.[1]

The Commission also found that Ms. Paige's fear that remaining on the job would endanger her health and welfare was unfounded and, that there was no abnormal risk presented by her job to her health and safety. Again, we find in the record uncontradicted testimony to just the opposite. Ms. Paige testified that the *"clients"* at the second facility were violent in nature, that her life had been threatened at least once, and that she had been physically assaulted. A co-employee fully corroborated that testimony and added that on one occasion, a *"client"* had come close to beating another to death. Ms. Paige further testified that her doctor was of the opinion that her health was suffering from the demands placed on her by her job. There is nothing in the record to suggest these incidents did not occur, or that Ms. Paige accepted them as a *"normal"* outgrowth of the job. We, therefore, reject the Commission's findings that Ms. Paige's fears were unfounded and that there was no abnormal risk in her job.

Finally, the Commission found that Ms. Page had *"condoned"* the conditions at the second facility for three months. Such a finding is clearly erroneous in light of the fact that Ms. Paige complained to her supervisors on several *different occasions*.

■ When the Commission decides facts contrary to all of the credible evidence, it has committed an error of law and is thus subject to reversal. *Dubois v. Maine Employment Security Commission, supra.* Such is the case here. The record is totally void of any competent evidence to support the Commission's findings. We, therefore, reject them.

■ When there is no dispute regarding the facts or no dispute is possible upon all of the evidence, the question becomes one of law. *Id.* 114 A.2d at 365. The latter being the case here, we turn to the applica-

---

1. Ms. Paige testified that her duties were the same at the two facilities. That fact, however, is vastly different from a factual determination that the conditions at the two facilities were identical. One can clearly carry out the same duties at facilities with widely differing working conditions.

ble legal test to determine Ms. Paige's eligibility for unemployment compensation.

26 M.R.S.A. § 1193(1)(A) (1964) requires that an employee who voluntarily leaves her employment must do so for *"good cause attributable to such employment"*, in order to be eligible for benefits. That Ms. Page *"voluntarily"* left her employment within the meaning of the statute is clear. *See Toothaker v. Maine Employment Security Commission*, Me., 217 A.2d 203 (1966). The issue thus becomes whether she did so for *"good cause"* attributable to her employment.

We held in *Therrien v. Maine Employment Security Commission*, Me., 370 A.2d 1385 (1977) that where an employee faces a change in his employment

> to which he rationally believes he cannot or should not accommodate himself for reasons of physical or mental health, . . the Commission would be warranted in treating the resigning employee as leaving with good cause and hence not disqualified under section 1193.1.A. *Id.* at 1390.

It is clear from Ms. Paige's testimony before the appeal examiner that she feared for her physical well-being. We are convinced, by both the testimony regarding the numerous other resignations at the facility and by the testimony of Ms. Paige and her co-employee regarding the assaults at the facility by *"clients"*, that Ms. Paige's fears were not groundless. We, therefore, find that Ms. Paige left her employment for *"good cause."*

Finally, the record discloses no basis for a finding that Ms. Paige's resignation was not due to her employment. In fact, all the evidence points to a contrary conclusion. We, therefore, find that her resignation was a direct result of the conditions present at the facility to which she was transferred.

Given the facts as they appear undisputed in this record, the conclusion becomes inescapable that Ms. Paige was entitled to benefits.

The entry must therefore be:

Appeal sustained.

Judgment vacated, case remanded to the Superior Court for remand, in turn, to the Employment Security Commission for further proceedings consistent with this opinion.