DAVID P. AINOA, Appellant-Appellant, *v.* UNEMPLOY-
MENT COMPENSATION APPEALS DIVISION,
DEPARTMENT OF LABOR AND INDUSTRIAL
RELATIONS, STATE OF HAWAII, and its Director
JOSHUA C. AGSALUD, Appellee-Appellee

RONALD G. NOLAN, Appellant-Appellant, *v.*
DEPARTMENT OF LABOR AND INDUSTRIAL
RELATIONS, STATE OF HAWAII, and its Director
JOSHUA C. AGSALUD, Appellee-Appellee

GARRET J. DRESSLER, Appellant-Appellant, *v.*
UNEMPLOYMENT COMPENSATION APPEALS
DIVISION, DEPARTMENT OF LABOR AND
INDUSTRIAL RELATIONS, STATE OF HAWAII,
and its Director JOSHUA C. AGSALUD, Appellee-
Appellee

NO. 6478

JULY 11, 1980

RICHARDSON, C.J., OGATA, MENOR, JJ.,
RETIRED JUSTICE KOBAYASHI AND CIRCUIT JUDGE LUM,
ASSIGNED BY REASON OF VACANCIES

OPINION OF THE COURT BY LUM, CIRCUIT JUDGE

This is a consolidated appeal[1] from the circuit court upholding the decisions of referees for Unemployment Compensation Appeals (hereinafter "referees") of the Department of Labor and Industrial Relations (hereinafter "Department") in denying unemployment insurance benefits under chapter 383, Hawaii Employment Security Law, to appellants, David P. Ainoa, Ronald G. Nolan and Garret J. Dressler.

Appellants are claimants[2] who individually applied for unemployment insurance benefits during 1975 with the Department. Upon application, they were given informal interviews with the Department's claims examiners;[3] they were declared to be ineligible for the claimed benefits as each was determined to be not "available for work" under Hawaii Revised Statutes (hereinafter "HRS") § 383-29(a)(3)[4] and, accordingly, their claims were denied by the claims examiners.

---

[1] Three individual appeals are actually involved. The circuit court, pursuant to Rule 42(a), Hawaii Rules of Civil Procedure, heard all three cases as a consolidated trial because of identical issues. Although only one notice of appeal was filed, we hold that all three cases are properly before this court. *See* State ex rel. Pacific Intermountain Express, Inc. v. District Court of Second Judicial District, 387 P.2d 550 (Wyo. 1963). *See also* Rule 2(d), Rules of the Supreme Court of the State of Hawaii.

[2] HRS § 383-32.

[3] HRS § 383-33.

[4] HRS § 383-29 *Eligibility for benefits*. (a) An unemployed individual shall be eligible to receive benefits with respect to any week only if the department of labor and industrial relations finds that:

. . . .

(3) Availability. He is able to work and is available for work; . . . .

Each decision was upheld on appeal by the referees following de novo hearings.[5] Appellants then appealed to the circuit court for judicial review,[6] and the circuit court affirmed the findings of the referees.

The pertinent facts and circumstances for disposition of this appeal are undisputed.

Appellants' claims before the referees presented an identical issue. Based upon the varying circumstances peculiar to each claim, the referees were required to determine the crucial question of whether appellants were "available for work" as required under § 383-29(a)(3). Following appellants' de novo hearings, this issue was resolved against all appellants.

In all instances, the resolution of the crucial issue by the referees[7] was accomplished by the referees' reliance on the following statements for their interpretation of the statutory language "available for work":

Available means that an individual is ready, willing, and able to accept suitable work in a labor market where there is an adequate demand for his services and without undue restrictions on acceptable work either self-imposed or created by force of circumstances.

To be *ready* for work you must show that you are immediately referable and can accept suitable work without delay.

*Willing* to work is a state of mind which can be inferred or determined from your statements, attitude, and behavior. It is usually demonstrated by a reasonable search for work.

*Able* to work is the physical and mental ability to do some work for which you are reasonably fitted in a potential labor market or employment field.

These statements were prepared, printed and furnished to all referees by the Department. The record is not clear

---

[5] HRS § 383-37.

[6] HRS § 383-41.

[7] Although both the claims examiners' and referees' hearings are being challenged in this appeal, we deem it necessary to address ourselves only to the referees' hearings, which were affirmed by the circuit court.

when the statements first became available to the Department's referees. However, in our case, it is undeniable that during appellants' hearings, the referees had access to the statements, which were kept in their notebooks, and relied on them to make their decisions; the referees' decisions in fact recited verbatim the language of the statements. Appellants were never furnished copies of these statements before their hearings.

Appellants in their briefs denominate these statements as "statewide policies"; the Department, in contrast, calls them "descriptive words and phrases."

Appellants argue that these "statewide policies" are rules[8] which were adopted by the Department without complying with the rule-making provisions of HAPA; and the Department, without formally adopting[9] and publishing[10] such rules, cannot thereafter use them to determine appellants' claims.[11] By violating the procedural safeguards as set out in HAPA, appellants were denied their due process rights.

The Department, on the other hand, argues that these "descriptive words and phrases" used by the referees to define the statutory term "available for work" are not rules within HAPA. The Department submits that the "descriptive words and phrases" are mere recitations of judicial construction of the term "available for work," and the Department is not required by chapter 383, HRS, to promulgate definitions of statutory terms. On oral argument, the Department amplified its position on what it meant by judicial construction. It argued it was merely reiterating or parroting judicial decisions.

For reasons set out below, we reverse.

---

[8] HRS § 91-1(4).

[9] HRS § 91-3.

[10] HRS § 91-5.

[11] HRS § 91-7(b).

I. WHETHER THE DEPARTMENT'S STATEMENTS INTERPRET-
ING THE STATUTORY LANGUAGE "AVAILABLE FOR WORK"
AS REQUIRED UNDER HRS § 383-29(a)(3) ARE RULES.

There is no dispute that HAPA is binding upon the Department. *See Town v. Land Use Commission*, 55 Haw. 538, 524 P.2d 84 (1974), *reh. denied*, 55 Haw. 677 (1974), in which this court held that, in the absence of a statutory exemption, a State agency "must conform to the requirements of HAPA when acting in either a rule making capacity (quasi-legislative), or in the adjudication of a contested case (quasi-judicial)." *Id.* at 545, 524 P.2d at 89.

The Department emphasizes it is parroting judicial decisions and is primarily relying on *Fujisaki v. Commission of Labor and Industrial Relations*, Civil No. 3860 (Territory of Hawaii, 1st Cir., January 23, 1959) and *Reinecke v. Commission of Labor and Industrial Relations*, Special Proceedings No. 2700 (Territory of Hawaii, 1st Cir., August 9, 1954), for its judicial construction appearing in its statements of "descriptive words and phrases," as both decisions had previously defined "available for work."

In *Reinecke* the court stated:

Numerous attempts to define the elements constituting availability have been made by the courts of other jurisdictions. In *Fleiszig v. Board of Review, Ill.*, 104 N.E.2d 818, the court stated:

" . . . the phrase 'available for work' is designed to test his continued and current attachment to the labor force."

In *Roukey v. Ripley* [*sic*], *N.H.*, 77 A.2d 30, 31, the court stated:

" . . . The availability requirement is said to be satisfied when an individual is willing, able and ready to accept suitable work which he does not have good cause to refuse, that is, when he is generally attached to the labor market. In other words, the purpose of the availability requirement is to test the claimant's attachment to the labor market."

This court is aware that the test of a claimant's availability is largely subjective . . . . The claimant must be ex-

posed unequivocally to the labor market and must be absorbed into the labor market. That is, he must be employable. Should the claimant, by his conduct or actions, volitionally create a barrier or restriction which prevents him from securing substantial work opportunities, he in effect, has made himself unavailable.

In *Fujisaki* the court stated:

Generally, to meet the requirements of availability, the claimant for unemployment benefits must meet the following requirements:

    1. He must be attached to the labor force;

    2. He must have a reasonable prospect for some demand for his services;

    3. He must be ready to work;

    4. He must be willing to work;

    5. He must be able to work.

A close comparison of the Department's definition of "available" with the standards set out in *Fujisaki* and *Reinecke* reveals that contrary to parroting such standards, the Department's definition goes beyond these case decisions.

Specifically, the Department's definition requires that "there is an adequate demand for his services"; the *Fujisaki* court simply required that there be "a reasonable prospect for *some* demand for his services." (Emphasis added.)

The Department's definition also requires that there be no "undue restrictions on acceptable work either self-imposed or created by force of circumstances." This implies that a claimant may be ineligible for unemployment insurance benefits due to forces beyond his control. The *Reinecke* decision refers solely to the actions of a claimant by stating "Should the claimant, by his conduct or actions, volitionally create a barrier or restriction which prevents him from securing substantial work opportunities, he in effect, has made himself unavailable."

Finally, the Department's definition varies from the court decisions by attempting to define key terms: ready, willing and able.

Thus it is apparent that the Department's definition goes beyond mere parroting of circuit court decisions; the Department's contention that the statements were judicial construction is patently erroneous.

Even assuming that the Department was parroting circuit court decisions, we wish to caution the Department that the adoption of these decisions for use by the Department's referees without following the requirements of HAPA appears to be contrary to the intent and purposes of HAPA,[12] inasmuch as circuit court decisions are not final and binding upon other courts and are not published for general circulation to the public.

We now turn to the appellants' contention that the statements furnished by the Department to the referees were rules under HAPA.

HRS § 91-1(4) defines "rule" as follows:

"Rule" means each agency statement of general or particular applicability and future effect that implements, interprets, or prescribes law or policy, or describes the organization, procedure, or practice requirements of any agency. The term does not include regulations concerning only the internal management of an agency and not affecting private rights of or procedures available to the public, nor does the term include declaratory rulings issued pursuant to section 91-8, nor intra-agency memoranda.

The language of the statute is clear and unambiguous. We hold that the Department's statements furnished to the referees are agency statements of general or particular applicability and future effect that implement, interpret, or prescribe

---

[12] As your Committee views the entire Administrative Procedure Act it may be said to have the following basic purposes:

(1) To require agencies to keep the public currently informed of their procedures, functions and rules.

(2) To provide for public participation in the rule-making process, by allowing any interested person to petition for a change in the rules as well as to participate in a public hearing.

(3) To prescribe uniform standards for the conduct of rule making and the handling of adjudicatory proceedings.

Standing Committee Report No. 8, 1961 Hawaii House Journal at 655.

law or policy. We hold, therefore, that the statements are rules as defined in § 91-1(4) and we further hold that the Department was engaged in rule making.

## II. EFFECT OF THE FAILURE TO COMPLY WITH HAPA.

Under the provisions of HRS chapter 91, the Department was required to provide public information,[13] provide for a public hearing in which interested persons could submit their viewpoints,[14] obtain the approval of the governor and file the rule with the lieutenant governor.[15]

The Department failed to comply with these requirements, thereby violating HRS § 91-2(b) and HRS § 91-7(b).

HRS § 91-2(b) states:

No agency rule, order, or opinion shall be valid or effective against any person or party, nor may it be invoked by the agency for any purpose, until it has been published or made available for public inspection as herein required, except where a person has actual knowledge thereof.

HRS § 91-7(b) states:

The court shall declare the rule invalid if it finds that it violates constitutional or statutory provisions, or exceeds the statutory authority of the agency, or was adopted without compliance with statutory rule-making procedures.

By the clear wording of the statute, we hold that the Department's rules are invalid.

The Department submits that even if the rules are invalid, there is no substantial prejudice to appellants' rights as the referees would have interpreted the bare wording of the statute to reach a conclusion similar to the one reached under the invalid rule.

---

[13] HRS § 91-2.

[14] HRS § 91-3.

[15] HRS § 91-4(a).

The Department's argument parallels the argument made by the Hawaii Housing Authority (hereinafter "HHA") in defense of its invalid rental rule in *Aguiar v. Hawaii Housing Authority*, 55 Haw. 478, 492, 522 P.2d 1255, 1264 (1974). The HHA had argued that since the rentals charged under the invalid rule would be the same as the rentals charged under the old valid system, the rights of the plaintiffs were not affected. In rejecting this argument, the court noted that:

> In substance, the HHA "waived" for some tenants but not for others strict application of the 20% of adjusted gross income system it now asserts to be authoritative. The sole basis for determining this waiver, moreover, was whether a tenant's estimated income exceeded limits which were adopted without affording tenants and the public an opportunity to participate as required by the HAPA. Since the salient criterion was itself invalid, therefore, we hold that the HHA may not now use it as a basis for differentiating the plaintiffs from all other public housing tenants, . . . .

The present situation parallels *Aguiar* as the Department has differentiated appellants from other claimants for unemployment insurance benefits on the basis of its invalid rules; appellants would be claimants who were found ineligible under the invalid rule and whose eligibility would therefore be evaluated solely by the referees' construction of the bare words of the statute. All other claimants would have their eligibility determined by the wording of the statute and by the Department's rules. Following *Aguiar*, we hold that the Department may not so impermissibly differentiate between appellants and other claimants.

Moreover, by using only the bare wording of the statute, the Department would be unable to guide and control the referees in their determinations of eligibility. The referees would use their individual interpretations of the statute leading to a line of inconsistent determinations. The Department would have the appearance of being arbitrary and capricious in violation of our holding in *In re Terminal Transportation, Inc.*, 54 Haw. 134, 138, 504 P.2d 1214, 1216 (1972): "[T]his court, in the absence of clear legislative direction to the

contrary, will not interpret provisions of the Hawaii Administrative Procedure Act so as to give government even 'an appearance of being arbitrary or capricious.'''

Finally we note that to follow the Department's argument would be to condone the Department's circumvention of HAPA and to defeat the intent and purposes of HAPA.[16]

As we reverse on the ground that the Department has violated the rule-making provisions of HAPA, we do not reach appellants' other claims.

*Michael A. Town (John J. Baker* on Opening Brief, Legal Aid Society of Hawaii of counsel), for appellants-appellants.

*Philip S. Uesato,* Deputy Attorney General, for appellees-appellees.

---

[16] Note 12 *supra.*