450 A.2d 469 (1982)
Carroll C. CROCKER
v.
MAINE EMPLOYMENT SECURITY COMMISSION.
Supreme Judicial Court of Maine.
Argued March 12, 1982.
Decided September 7, 1982.
Downeast Law Offices, P. A. by Richard M. Goldman (orally), Kim M. Vandermeulen, Augusta, for plaintiff.
Susan P. Herman, Asst. Atty. Gen. (orally), Augusta, for defendant.
Before McKUSICK, C. J., GODFREY, NICHOLS, ROBERTS, VIOLETTE and WATHEN, JJ., and DUFRESNE, A. R. J.
DUFRESNE, Active Retired Justice.
The plaintiff, Carroll Crocker, appeals from a judgment of the Superior Court, Kennebec County, affirming a decision of the Maine Employment Security Commission (MESC), which terminated the plaintiff's receipt of unemployment benefits, established a one year prospective ineligibility to receive any benefits, retrospectively disqualified him and ordered him to remit $936.00 in overpayments. Crocker argues that the Commission erred in finding that he made false statements or representations knowing them to be false and that he knowingly failed to disclose material facts in his applications to obtain benefits. He further claims that the Commission abused its discretion in imposing penalties against him. We reverse.

I.
The plaintiff, Carroll Crocker, applied for unemployment benefits on June 16, 1980, after he was laid off, through no fault of *470 his own, by Baker Bus Service, where he had been employed as a mechanic for five years. He received $104.00 per week from June 21, 1980, until August 16, 1980, when a deputy of the Maine Employment Security Commission declared him ineligible. The deputy found, among other things, that the plaintiff had "knowingly made false statements, knowing them to be false and failed to disclose material facts in [his] applications for benefits." The Appeal Tribunal's decision in affirming the deputy's conclusions stated its findings as follows:
[T]he claimant made false statements or representations knowing them to be false and knowingly failed to disclose material facts in his application to obtain benefits, within the meaning of Section 1193-6 of the Employment Security Law. Further, the claimant received benefits to which he was not entitled while conditions for the receipt of benefits imposed were not fulfilled in his case, within the meaning of Section 1051-4 of the Employment Security Law. (Emphasis provided).
These findings were the basis, in turn, of the Commission's affirmance of the Appeal Tribunal's decision upholding the deputy's action and of the Superior Court's adjudication that the Commission decision was legally correct. The appeal to this Court brings into focus the significance of the plaintiff's activities over the course of the summer during which Crocker was collecting unemployment compensation benefits.
In late May, 1980, the plaintiff and his wife jointly obtained a license for and opened up a business, the Lakeview Bait & Tackle Shop, in rented accommodations in Winthrop. At that time, they did not know that the plaintiff would be laid off. Mrs. Crocker had quit her job in a nursing home in order to run the shop. While the plaintiff was working at the bus company, his wife would open the store in the morning around 6:30 a. m.; the plaintiff would then relieve her in late afternoon and work until 8:30 p. m. He built a tank in which to store the live bait. He kept the books until June 13th, when he stopped working at the bus company. After June 13th, his participation in the business changed.
During the months the plaintiff was collecting unemployment benefits, he did not work at the store or keep the books. Several times a week, however, he drove his nephew to ponds where the boy caught bait to be sold in the bait shop. At first, he did show his nephew how to catch each kind of bait. This task of securing bait required two to three hours each day the plaintiff took his nephew to the ponds. The plaintiff, in a statement made to the MESC on August 25, 1980, stated: "All I do is spend 2 or 3 hours a day supervising & overseeing the business operations to include 2 or 3 hours a day fishing or procuring the bait supply." Apparently basing his decision on this statement, the deputy found that the plaintiff knowingly had falsely stated in his weekly applications for unemployment compensation benefits that he had not worked or earned wages in each of the several weeks involved and that he was able and available for work on each day during that time. He further found that, by reason of his self-employment and unavailability for other work during the reference weeks, Crocker knowingly had failed to disclose material facts in his applications. The deputy ruled that the plaintiff was in violation of sections 1193(6), 1051(1) and 1051(4) of the Employment Security Law.
The plaintiff appealed the deputy's decision to the Appeal Tribunal and a hearing was held on September 23, 1980. At that hearing, Mr. Crocker stated that he had been available for work during the summer and had not knowingly withheld any material information. He testified he had not received any wages from the business,[1] and, insofar as his participation in the bait gathering was concerned, he said that he only "walked around or read a book" while his nephew caught the bait. The hearing examiner asked the plaintiff why he considered *471 his services for the shop prior to being laid off as "work," but considered the task of driving his nephew around for bait catching, not to be "work," even though he received no wages in either case. The plaintiff, after apparently becoming confused about these distinctions, replied that what he did before being laid off could be called work, and he called it work. None of this testimony was contradicted, since the Crockers were the only witnesses at the hearing.
On October 3, 1980, the Appeal Tribunal issued its decisions affirming the deputy's findings. On appeal to the Commission, the MESC affirmed and adopted the Appeal Tribunal's decisions.
The plaintiff seasonably filed a complaint in the Superior Court, Kennebec County, pursuant to 26 M.R.S.A. § 1194(8) and 5 M.R.S.A. § 11001 et seq., alleging that the decisions were contrary to law and to all credible evidence, and that, in addition thereto, the ensuing penalty was arbitrary.
While the plaintiff's Superior Court petition for review of the agency action was pending, the parties to this appeal submitted a partial consent decree to the Superior Court, in which they agreed that the decisions concerning the plaintiff's availability for work and his employment status had been erroneous and should be reversed. The Court so ordered on June 1, 1981. Following a hearing, the decision of the Commission to the effect that the plaintiff had violated 26 M.R.S.A. § 1051(4) and § 1193(6) was affirmed on September 11, 1981, the Court concluding on a review of the record that
1. The decision and facts found by the Maine Employment Security Commission are supported by substantial evidence in the record.
2. With its findings the Commission did not err, as a matter of law, in reaching its decision, nor did it abuse its discretion in disqualifying the petitioner from receiving benefits for one year.
The plaintiff has seasonably appealed the decision of the Superior Court.

II.
Initially, we recognize that, in reviewing a decision of the Employment Security Commission, the Law Court will examine the record to determine whether there exists any competent evidence to support the agency findings and then ascertain whether upon those findings the applicable law has been correctly applied. Shone v. Maine Employment Security Commission, Me., 441 A.2d 282, 283 (1982); Tobin v. Maine Employment Security Commission, Me., 420 A.2d 222, 224-25 (1980). On judicial review, the court is without authority to overrule findings of fact made by an administrative agency when those findings are supported by substantial evidence, i.e. such relevant evidence as a reasonable mind might accept as adequate to support the resultant conclusion. Sanford Highway Unit v. Town of Sanford, Me., 411 A.2d 1010, 1014 (1980).

III.
The Superior Court's affirmance of the agency action in the instant case must be viewed and evaluated in the light of the parties' approved stipulation to the effect that the administrative decision was erroneous in two basic aspects of alleged specific ineligibility under the Employment Security Law. In other words, the Commission by the stipulation was conceding that the plaintiff's furnishing of his services in driving his nephew to the several ponds to gather bait for the bait and tackle shop operated by his wife and licensed as a joint business venture did not in fact and law render him unavailable for work, and that, notwithstanding such services, Crocker was available for work within the meaning of the eligibility requirements of 26 M.R.S.A. § 1192(3).[2] Also, the Commission was admitting *472 that the furnishing of the reference services did not in fact and law nullify his unemployment status, another prerequisite of unemployment benefit eligibility pursuant to said section 1192. See note 2.
The ultimate order of the Superior Court, fully affirming the underlying agency findings and adjudications, served to reassert, as if specifically incorporated therein, the basic agency findings articulated in the decision of the Appeal Tribunal which we now requote:
It is the finding of this Tribunal that the claimant made false statements or representations knowing them to be false and knowingly failed to disclose material facts in his application to obtain benefits, within the meaning of Section 1193(6) of the Employment Security Law. Further, the claimant received benefits to which he was not entitled while conditions for the receipt of benefits imposed were not fulfilled in his case, within the meaning of Section 1051(4) of the Employment Security Law. (Emphasis supplied).[3]
The record of the hearing at the Appeal Tribunal level indicates that the claimant's answers, certified to be true and correct, to two questions on the application forms submitted by mail weekly to obtain unemployment compensation benefits played a critical part in the examiner's conclusions that Crocker had violated both of the stated sections of the law. To the question, "were you able and available for work each day," the claimant had marked the "yes" box on each claim form, while he had marked the "no" box to the question, "did you work or earn wages this week."
The reasons for the examiner's conclusions were outlined in the following recital:
Several factors must be considered in determining this case. First, the claimant was not available for work during the period of two or three hours daily that he was procuring or overseeing bait. There is no possible way that he could have been contacted for employment if work became available. In addition, the claimant was providing a service for an organization which he was listed as a seller, partner, or co-owner. Whether or not he was receiving money is immaterial. He was self-employed and in conjunction with his wife shared in whatever profits were realized. How the profits were distributed is immaterial.
Secondly, the claimant knew that his statements were false and that he withheld a material fact in his application for benefits in applying for these benefits. This conclusion is supported by his recognition that he worked during the period prior to June 14, 1980, while performing a service for the bait shop and was not paid. His purported distinction that he did not consider this as work beyond that point in time because he was not paid is an evasive rational for his failure to report a material fact. The information was clearly supplied to the claimant when he applied for unemployment benefits *473 that he must report any services including self-employment whether or not he had been paid. When the information concerning the Law filing claims for unemployment benefits is provided to him, he bears the responsibility for that knowledge. In addition, the claimant knew that he could not be self-employed and file claims for unemployment benefit. This is supported by the fact that he ceased relieving his wife in the afternoon.
Since the parties in their partial consent decree agreed that the basic agency findings relating to the claimant's availability for work and status as an unemployed individual were erroneous and were being reversed, we must conclude that the claimant at all relevant times was available for work and unemployed within the meaning of 26 M.R.S.A. § 1193(6) and obviously had not made false statements or representations in connection with the quoted answers in the application questionnaire. This in itself taints with reversible error the Superior Court's affirmance of the agency decision and resultant punitive sanctions, since the Commission's disqualification and reimbursement orders which the Superior Court upheld were expressly based on both a knowing false statement and a knowing or ought-to-have-been-known fraudulent nondisclosure of a material fact in obtaining benefits.
A majority of the Court believes that we need not go further in our analysis. Simply put, the Court holds that the agreement of the parties in Superior Court, (1) that Crocker was available for work and (2) that Crocker was not employed, precludes any imposition of sanctions under 26 M.R.S.A. § 1051 or § 1193.
The effect of the "Partial Consent Decree" was to establish conclusively that the two statements found by the Commission to have been false were not in fact false. It follows that Crocker was in fact eligible for benefits and that the nondisclosure of his bait-catching activities was not fraudulent. In view of the provisions of the consent judgment the Court does not decide whether the Commission erred in its conclusion that Crocker ought to have known that disclosure of his bait-catching activities was required.
The writer of this opinion does not share the view of the majority of the Court to the effect that the parties, through the "Partial Consent Decree" which they submitted to the court below for approval, in and of itself eviscerated from the case all remaining issue in the litigation. Neither party pursued such a position on appeal and the Superior Court obviously did not entertain such a notion. Although concurring in the ultimate result reached by this Court, I do believe that it would be beneficial for me to offer in separate opinion my views on an issue decided in the court below and argued by the parties on appeal to this Court.
The entry will be:
Appeal sustained.
The judgment of the Superior Court is reversed.
The case is remanded to the Superior Court for entry of judgment that the claimant, Carroll C. Crocker, is entitled to unemployment compensation benefits as claimed by him; the Superior Court to remand the case, in turn, to the Employment Security Commission, for the Commission to vacate its original orders therein with instructions to remove the disqualification based upon 26 M.R.S.A. § 1193 and the liability for overpayment based upon 26 M.R.S.A. § 1051 and to reinstate the claimant's eligibility for benefits.
McKUSICK, C. J., GODFREY, NICHOLS, ROBERTS, VIOLETTE and WATHEN, JJ., concurring.
DUFRESNE, Active Retired Justice (further concurring in separate opinion).
Disregarding for the time being the propriety of the penalty or disqualification portion of the agency decision as approved by the Superior Court, we cannot sustain the agency finding that the claimant knowingly and fraudulently failed to disclose material facts in his application for the purpose of obtaining unemployment compensation benefits. First, we note that the application *474 form does not request the disclosure of other facts, material or otherwise, not called for by the several questions listed on the form itself and that all the claimant's answers were true and correct in the light of the partial consent decree of the parties. Assuming, however, as the Commission and the hearing examiner did, that the claimant's summer activity as disclosed by this record was a material fact that should have been disclosed when applying for benefits, the evidence is wholly insufficient to support a finding that Crocker knew or should have known that he was withholding material facts from the unemployment compensation authorities fraudulently, i.e. with intent to deceive them.
The remedial nature of the unemployment compensation statute dictates a liberal construction of the Act in favor of the employee and, where the punitive features of the legislation are called into play, any adjudication of disqualification or ineligibility for benefits must be strictly reviewed. See Tobin v. Maine Employment Security Commission, Me., 420 A.2d 222, 225-26 (1980).
The punitive sanctions provided in the Act for falsifying or failing to disclose a material fact in an application to obtain benefits, 26 M.R.S.A. §§ 1193(6) and 1051(4), cannot be invoked except upon proof that the claimant knew or ought to have known that the misrepresentation or nondisclosure was a fraudulent misrepresentation or nondisclosure of a material fact.
The record does support the Commission's finding that the plaintiff claimant knew he could not "work" while receiving unemployment compensation; indeed, he stopped tending the store and keeping the books at the bait and tackle shop, when his employment ceased at the bus company. But the plaintiff in his testimony and by his actions fully demonstrated that he understood "work" to mean activities other than chauffering his nephew from one waterhole to another for which he did not receive, nor did he expect, any pay or wage. Thus, there was no competent evidence to support the Commission's finding that Crocker subjectively knew that he was fraudulently answering falsely the question: did you work or earn wages this week? It was error of law to find a violation of either of the reference sections on the basis of any knowing fraudulent misrepresentation or nondisclosure of a material fact on the part of the plaintiff claimant.
The Commission, however, argues that the evidence does support a finding that Crocker ought to have known that the nondisclosure of the facts, assumed by the Commission to be material, was fraudulent, subjecting him to the penalties imposed. We disagree. The basis for the Commission's conclusion in this respect is the fact that the plaintiff claimant was provided an information booklet which defined the term "work" when he applied for unemployment benefits. Although Crocker testified that he did not read the contents of the booklet, the hearing examiner with the approval of the Commission held as a matter of law that
"[w]hen the information concerning the law [on] filing claims for unemployment benefits is provided to [a claimant], he bears the responsibility for that knowledge."
It is upon this conclusive presumption (an applicant for unemployment benefits is chargeable with knowledge of the information supplied to him) that the Commission reached its finding that the plaintiff claimant ought to have known that his nondisclosure of his summer activity was a fraudulent nondisclosure of material facts subjecting him to the penalties incurred. We cannot agree.
The booklet itself states that it has no legal effect and had not been promulgated under the agency's rule-making authority. The language upon which the Commission directs our attention reads as follows:
You must report any services you performed during the week claimed. This means any and all work, including selfemployment, whether or not you received any pay.
*475 We need not give any consideration to the quoted paragraph with respect to its applicability vel non to the facts of this case, for the Commission's use thereof in support of a finding of constructive knowledge on the part of Crocker that his nondisclosure of his summer activity was knowingly fraudulent was error as a matter of law. See Seymour v. Vermont Department of Employment Security, 133 Vt. 397, 340 A.2d 96, 98 (1975). Administrative guidelines, which the Commission conceded were not adopted officially as rules and regulations as provided by 26 M.R.S.A. § 1082 and the Maine Administrative Procedure Act, 5 M.R.S.A. §§ 8051-8057 are of no legal effect as such. Id. at 8057. They cannot serve as a proper basis in support of a conclusive presumption of fraudulent misrepresentation or nondisclosure of a material fact as was done in the instant case. See Ainoa v. Unemployment Compensation Appeals Division, 62 Haw. 268, 614 P.2d 380, 385 (1980).
When there is no dispute regarding the facts and no possibility of any upon consideration of all the evidence, the issue becomes one of law. Paige v. Maine Employment Security Commission, Me., 391 A.2d 321, 324 (1978).
The instant case presents a factual scenario substantially identical with the situation that confronted the Oregon Court in Shaffer v. Employment Division, 33 Or.App. 537, 577 P.2d 85 (1978), where the unemployment compensation claimant, who occasionally assisted his wife in her farm work and spent 5 to 12 hours per week assisting his replacement at his former place of employment and who received no remuneration from his activity, was held not to have made a false statement of material fact when, in filling out his weekly compensation claim forms, he stated he had done no work during the previous week. We conclude that, as in Shaffer, Crocker's assistance to his wife in connection with the transportation of his nephew for the purpose of bait gathering for the shop, even though licensed in both names, was very minimal, indeed. His limited activity, as conceded by the Commission, did not financially benefit the claimant, nor unduly restrict his time. The Commission's finding of fraudulent misrepresentation or nondisclosure of a material fact subjecting the claimant to the penalties of disqualification and reimbursement of the benefits received is wholly unsupported by the record and constitutes reversible error as a matter of law. See also Springer v. State, 120 N.H. 520, 418 A.2d 1277, 1279 (1980).
The Commission had the duty to determine all of the issues which were properly and adequately raised by the evidence in order that one judicial review may effectively terminate the case. Lawrence v. State Employment Security Commission, Me., 432 A.2d 790, 792 (1981). Given the undisputed facts of this case, our conclusion becomes inescapable that Crocker was entitled to benefits.
NICHOLS, J., joins in this separate concurring opinion.
NOTES
[1] Mrs. Crocker testified that the business brought in $2,122.85, but had expenses (not including any salary to any person) of $1730.02, and thus netted $282.83. The Appeal Tribunal found that "all profits and income were kept by his wife."
[2] 26 M.R.S.A. § 1192, provides as follows:

An unemployed individual shall be eligible to receive benefits with respect to any week only if:
(3) Is able and available for work. He is able to work and is available for full-time work at his usual or customary trade, occupation, profession or business or in such other trade, occupation, profession or business for which his prior training or experience shows him to be fitted or qualified; . . . .
[3] These two sections which the claimant was found guilty of violating read as follows:

26 M.R.S.A. § 1193:
An individual shall be disqualified for benefits:
(6) Has falsified. For any week for which the deputy finds that the claimant made a false statement or representation knowing it to be false or knowingly fails to disclose a material fact in his application to obtain benefits and in addition, the claimant shall be ineligible to receive any benefits for a period of not less than six months nor more than one year from the mailing date of the determination.
26 M.R.S.A. § 1051(4):
Any person who, by reason of the nondisclosure or misrepresentation by him or by another, of a material fact, and such nondisclosure or misrepresentation was known to him or ought to have been known by him to be fraudulent, has received any sum as benefits under this chapter while any conditions for the receipt of benefits imposed by this chapter were not fulfilled in his case, or while he was disqualified from receiving benefits, shall either be liable to have such sum deducted from any future benefits payable to him under this chapter or shall be liable to repay to the bureau for the Employment Compensation Fund, a sum equal to the amount so received by him, and such sum shall be collectible in the manner provided in subsection 6.