*748
ORDER DENYING PLAINTIFF’S MOTION FOR PRELIMINARY INJUNCTION

KAY, Chief Judge.

BACKGROUND

On December 18, 1995, plaintiff Conrad Wood Preserving Co. (“Conrad”), an Oregon corporation with its principal place of business in Oregon,[1] filed a complaint and a motion for temporary restraining order and preliminary injunction against defendant Randall K. Fujiki, individually and in his capacity as Director and Building Superintendent of the Building Department of the City and County of Honolulu. The Court construes Conrad’s motion as one for preliminary injunction.
Conrad alleges that Fujiki improperly approved the use of HI-BOR[2] for treating structural lumber for construction in Hawaii in violation of notice and public hearing provisions under the Hawaii Administrative Procedure Act (“HAPA”). See H.R.S. § 91-3(a) (“Prior to the adoption of any rule authorized by law, ... the adopting agency shall: (1) Give at least thirty days’ notice for a public hearing_ (2) Afford all interested persons opportunity to submit data, views, or arguments, orally or in writing_”). Conrad also submitted evidence with its motion to the effect that HI-BOR is ineffective when used to treat Douglas fir against Formosan termites.[3]
Fujiki responds that his approval of HI-BOR was not “rulemaking” under H.R.S. § 91-1(4)[4] and therefore was not subject to the notice and public hearing provisions of the HAPA. Fujiki also submitted letters from Professors Minoru Tamashiro and Kenneth Grace, relied upon by Fujiki, to the effect that the one year field test in Hilo (the “Hilo test”) conducted by Chemical Specialties, Inc. (“CSI”) and relied upon by Conrad (Motion, Exh. F) may have been flawed.
Beginning January 9, 1996, the Court heard plaintiffs motion for preliminary injunction. Plaintiff Conrad and defendant Fujiki appeared through counsel. Upon considering the papers filed by the parties, the evidence presented at the hearing, the arguments of counsel and the record, the Court hereby DENIES plaintiffs motion.

FACTS

Section 2516(c)(3) of the Uniform Building Code (“UBC”) (1991 ed.), as adopted and amended by Section 16-l.l(b)(67)(C) of the Revised Ordinances of Honolulu 1990 (“ROH”), provides in relevant part that:
[A]ll structural lumber ... that [is] supported directly on the ground by a concrete slab shall be:
A. Treated in accordance with AWPA Standards Cl, C2, and C9 for ACZA and for CCA, or treated with inorganic boron or other preservative as approved by the *749 building official, all marked or branded by an approved agency; or
B. Treated in accordance with the former AWPB Approved Hawaii Local Area Standard, all marked or branded by an approved agency. All end cuts shall be field protected with a preservative in accordance with the manufacturer’s instructions.
Id. (emphasis added).
By two Reports of Action on Request for Approval of Methods and Materials Under Building Department Codes and Regulations dated June 27 and July 18, 1995 (together, the “Approval”), Fujiki approved the requests of U.S. Borax and Chemical Corporation (“U.S. Borax”) for use of Tim-Bor/HI-BOR as a wood preservative for structural lumber in Hawaii. Motion, Exhs. B and C. The Approval was based on favorable penetration & retention test results by Timber Products Inspection and Research (“TPI”) and on reports by “Su and Scheffrahn and Tamashiro and Yamamoto.” Id.
The Approval also is subject to certain conditions:
1. Treatment process shall conform to AWPA Standard Cl-90, All Timber Products — Preservative Treatment by Pressure Processes.
2. Conditioning and incising of wood prior to treatment is not required.
3. Minimum retention shall be as follows: a) For nominal thickness of 2 inches and less, minimum of 1.43% (by weight) or 0.4 pounds per cubic foot of D.O.T. in a cross-section; b) For nominal thickness greater than 2 inches, minimum of 1.43% (by weight) or 0.4 pounds per cubic foot of D.O.T. in a 0.75-inch assay zone.
4. Minimum penetration in inches of wood and percent sapwood, whichever is greater, shall be as follows: a) Under 5 inches thick: 0.40 inch and 100; b) 5 inches and thicker: 0.50 inch and 100.
5. Quality control procedures for the inspection of lumber and plywood products which have been pressure treated with D.O.T. shall conform to the specifications outlined in AWPA Standard M2-90. Inspection of the treated timber products shall be performed by Timber Products Inspection, Inc.
Lumber that has been pressure treated with D.O.T. and has met all of the quality certification requirements as certified by Timber Products Inspection, Inc., shall be stamped with the HI-BOR quality mark.
It is undisputed that Fujiki did not give notice and hold a public hearing pursuant to H.R.S. § 91-3(a) before issuing his Approval.

PRELIMINARY INJUNCTION STANDARD

In Miller v. California Pacific Medical Ctr., 19 F.3d 449 (9th Cir.1994), the Ninth Circuit set forth the standard for granting a preliminary injunction as follows:
Traditionally we consider (1) the likelihood of the moving party’s success on the merits; (2) the possibility of irreparable injury to the moving party if relief is not granted; (3) the extent to which the balance of hardships favors the respective parties; and (4) in certain cases, whether the public interest will be advanced by granting the preliminary relief.
Id. at 456 (citing United States v. Odessa Union Warehouse Co-op, 833 F.2d 172, 174 (9th Cir.1987)).
The moving party must show ‘either (1) a combination of probable success on the merits and the possibility of irreparable harm, or (2) the existence of serious questions going to the merits, the balance of hardships tipping sharply in its favor, and at least a fair chance of success on the merits.’
Miller, 19 F.3d at 456 (quoting Senate of California v. Mosbacher, 968 F.2d 974, 977 (9th Cir.1992)).
‘These two formulations represent two points on a sliding scale in which the required degree of irreparable harm increases as the probability of success decreases.’
Miller, 19 F.3d at 456 (quoting Odessa Union, 833 F.2d at 174).

DISCUSSION

Before considering the propriety of injunc-tive relief, the Court first addresses a number of preliminary matters.
*750 First, the Court finds that Conrad has alleged economic injury in fact, in the form of decreased sales of its products, sufficient to give it standing to bring this action. See, e.g., Pennell v. City of San Jose, 485 U.S. 1, 8, 108 S.Ct. 849, 855, 99 L.Ed.2d 1 (1988) (standing found where landlord association brought action for declaratory and in-junctive relief against city rent control ordinance allowing consideration of tenant “hardship” before approving rent increases proposed by landlords; landlords “‘demón-stratela] a realistic danger of sustaining a direct injury as a result of the statute’s operation or enforcement’”) (quoting Babbitt v. Farm Workers, 442 U.S. 289, 298, 99 S.Ct. 2301, 2308, 60 L.Ed.2d 895 (1979)). Fujiki’s argument that Conrad lacks standing because the injury it alleges is “future” and “speculative” apparently confuses standing with the requirements for issuance of a preliminary injunction. See Opposition at 9. The purpose of a preliminary injunction is to prevent against the possibility of irreparable injury.
Second, the Court declines to abstain from entertaining this action. The Pullman abstention doctrine, cited by Fujiki, is inapplicable because this case raises no federal constitutional issue that might be mooted or presented in a different posture by a state court determination of pertinent state law. See C-Y Dev. Co. v. City of Redlands, 703 F.2d 375, 377 (9th Cir.1983).
Third, the Court finds that this action is not improper for failure to exhaust administrative remedies. Fujiki contends that Conrad first should have contested the approval of HI-BOR before the Building Board of Appeals. However, Revised Ordinances of Honolulu § 16-l.l(b)(4)(c)(l) specifically allows only appeal from a denial of the use of new or alternate materials.
Here, we have an approval, and the approval is of inorganic boron, which is not a new or alternate material but which has been specifically authorized in ROH § 16-l.l(b)(67)(C). Moreover, Conrad was not a party to the approval of the request of U.S. Borax. Finally, H.R.S. § 91-7 provides that any interested person may obtain a judicial declaration as to the validity of an agency rule “whether or not that person has first requested the agency to pass upon the validity of the rule in question.” Here, Fujiki’s position is clear that he believes his approval of HI-BOR was valid.
The Court now considers the propriety of preliminary injunctive relief.
I. LIKELIHOOD OF SUCCESS
The issue presented here is whether Fujiki’s Approval was “rulemaking” under the HAPA. If so, the Approval is invalid. Ainoa v. Unemployment Compensation Appeals Div., 62 Haw. 286, 293, 614 P.2d 380 (1980).
In support of the proposition that the Approval was “rulemaking,” Conrad cites Ainoa and Vega v. Nat’l Union Fire Ins. Co. of Pittsburgh, Pa., Inc., 67 Haw. 148, 682 P.2d 73 (1984). In Ainoa, the Hawaii Supreme Court held that the Department of Labor had engaged in rulemaking when it interpreted the phrase “available for work” under H.R.S. § 383-29(a)(3) — in the process defining “available,” “ready,” “willing” and “able” to work — and provided its interpretation to referees ruling on the eligibility of claimants. Ainoa, 62 Haw. at 288, 292-93, 614 P.2d 380.
Here, however, the relevant ordinance language — “or treated with inorganic boron or other preservative as approved by the braiding official” — delegated to Fujiki the authority to approve particular manufacturers’ inorganic boron wood preservatives. Fujiki did not engage in statutory interpretation. Instead, he contends he simply exercised his delegated authority when on June 27 and July 18, 1995 he approved the use of HI-BOR, manufactured by U.S. Borax, and he asserts that his Approval was authorized under Section 402 of the Building Code. Whether approving one manufacturer’s product when one has been delegated the authority to approve a class of such products constitutes rulemaking under the HAPA is not answered by Ainoa.
Vega is somewhat more instructive. In Vega, the Insurance Commissioner validly had promulgated a rule mandating that “[a]ny [no-fault insurance] policy issued or renewed on or after September 1, 1974 shall *751 provide the coverage required of a no-fault policy in accordance with the endorsement prescribed by the Commissioner....” Id., 67 Haw. at 149, 682 P.2d 73. However, the Commissioner then proceeded to draft and prescribe a specific endorsement to be included in all motor vehicle policies — without notice and a hearing — which endorsement contained a clause compelling an injured person eligible for no-fault benefits to “submit to medical examination by physicians selected by, or acceptable to, the ... [insurer] when, and as often as, the ... [insurer] may reasonably require.” Id. The Hawaii Supreme Court held that the provision at issue was void because the endorsement had not been adopted as a rule in conformity with the HAPA. Id.
Here, however, it is difficult to argue that Fujiki’s approval of HI-BOR is analogous to the Commissioner in Vega mandating legal language in an endorsement, requiring submission to medical examinations, for inclusion in all motor vehicle insurance policies.
The Court finds State of Hawaii v. Tengan, 67 Haw. 451, 691 P.2d 365 (1984) far more instructive. In Tengan, H.R.S. § 286-151 provided that anyone “who operates a motor vehicle on the public highways of the State shall be deemed to have given consent ... to a test approved by the director of transportation [to determine] the alcoholic content of the person’s blood.” Id. at 458, 691 P.2d 365 (emphasis in original). Defendants alleged the use of the Intoxilyzer 4011 AS (a particular breath testing device) to measure blood alcohol concentration had not been authorized by a properly adopted rule. Id. at 452, 454, 691 P.2d 365. The Hawaii Supreme Court held that “the approval by the Director of Transportation of the use of the Intoxilyzer in chemical testing for blood alcohol was not subject to the rule-making procedures of the Administrative Procedure Act.” Id. at 458-59, 691 P.2d 365. However, the Hawaii Supreme Court also stated: “We entertain no doubt that when an agency prescribes testing procedures to be employed in determining blood alcohol concentration, it is acting in a rule-making capacity.” Id. at 459, 691 P.2d 365.
Here, had Fujiki simply approved the use of HI-BOR, the Court might be inclined to find little likelihood of success on the merits. However, in addition to approving the use of HI-BOR, Fujiki also promulgated conditions of approval, including standards for minimum retention and penetration. Fujiki exercised discretion in setting these standards, which is a quasi-legislative function. Neither the Uniform Building Code nor the Revised Ordinances of Honolulu specify, for example, minimum retention or penetration standards for the use of inorganic boron.
Fujiki’s conditions of approval appear to apply across the board to all wood treating facilities treating wood with HI-BOR. Thus, they are akin to the “testing procedures” in Tengan the Hawaii Supreme Court would have found to be rules. They also are not mere “internal regulations,” as was the case in In re Doe, 9 Haw.App. 406, 844 P.2d 679 (1992), nor do they involve adjudication, as was the case in Foster Village Community Ass’n v. Hess, 4 Haw.App. 463, 667 P.2d 850 (1983).
Fujiki’s conditions for approval appear to constitute an “agency statement of general or particular applicability and future effect that implements, ... or prescribes law or policy, or describes the ... procedure, or practice requirements of [the] agency.” H.R.S. § 91-1(4). The Court also notes that the conditions for approval were developed by Fujiki in consultation with his staff and the Termite Treatment Advisory Committee comprised of professors, architects, wood treaters, ground treaters and contractors. This would appear to be the sort of policy making, arrived at with the input of interest groups, experts and other interested persons, that is essentially legislative in nature. In short, Fujiki’s approval, together with his conditions of approval, would appear to be rulemaking.
As the Court does not need to reach a final decision on this issue for the purposes of this preliminary injunction motion, the Court thus finds that Conrad has demonstrated a likelihood of success on the merits.
II. IRREPARABLE INJURY TO MOVING PARTY
Conrad fails to allege any irreparable injury to itself, except in its memorandum on *752 standing filed January 9th, 1996, in which Conrad asserted it had been injured by the approval of its competitor’s product. While it may have lost some sales, the Court finds that Conrad has not established irreparable injury to itself. Furthermore, Conrad has been aware of Fujiki’s approval of HI-BOR for over half a year. The Court finds the second factor favors Fujiki.
III. BALANCE OF HARDSHIPS OF RESPECTIVE PARTIES
In light of Section II above, this factor clearly favors Fujiki, especially in light of his testimony that 80% of the building industry in Hawaii uses structural lumber treated with HI-BOR and that construction using HI-BOR treated lumber is ongoing and widespread.
IV. PUBLIC INTEREST
Finally, as discussed above, “in certain cases, whether the public interest will be advanced” is a valid factor to consider in granting preliminary relief. See Miller, 19 F.3d at 456; Odessa, 833 F.2d at 176 (in enforcement action by U.S. for violations of Food, Drug, and Cosmetic Act, public interest should be considered).
With respect to this factor, while the Court notes that the evidence presented by Conrad’s experts has raised concerns regarding the suitability of the use of inorganic boron wood preservatives in Hawaii, the Court nonetheless finds that Conrad has failed to demonstrate that the public interest will be advanced by an injunction or that there is a possibility of irreparable harm to the public.
With respect to the TPI/OSU test,[5] the Court notes that the two facilities, despite testing samples cut from the same boards, found significantly differing results in many instances. Dr. Morrell testified that laboratory results typically differ even when using the same methodology on the same wood. Dr. Preston testified regarding his field test that wood preservation depends on the particular site, climate and biological factors involved. Dr. Preston also acknowledged that since retention was measured by weight, it was not possible to determine the distribution of the penetration or whether the heartwood had been penetrated. Moreover, the question is not whether commercially available HI-BOR treated wood complies with Fujiki’s standards but whether the standards themselves pose the possibility of irreparable harm to the public.
The Court notes that the affidavits and testimony of Drs. Morrell[6] and Preston, including Dr. Preston’s field test in Hilo,[7] raise *753 questions concerning whether inorganic boron is suitable for Douglas fir against the Formosan subterranean termite in Hawaii.
However, the Court also notes that FujiM developed Ms conditions for approval of Tim-Bor/HI-BOR as a wood preservative with input from the Termite Treatment Advisory Committee, including professors and experts from various disciplines. In addition, the International Conference of Building Officials Evaluation Service has promulgated acceptance criteria for the use of inorganic boron as a wood preservative for Douglas fir and other types of lumber.
It thus appears to the Court that there is disagreement and uncertainty in the relevant scientific and polieymaldng community over the suitability of the use and relevant standards of inorgamc boron as a wood preservative in Hawaii. The Court understands Fu-jiM’s staff met with Dr. Preston on May 16, 1995 and discussed concerns regarding his report; although no public hearing was held for the subject approvals of HI-BOR by FujiM.
While the Court urges continued study of this issue, it does not find at tMs point irreparable injury to the public. However, the Court suggests strongly that the Building Department begin taMng steps immediately, prior to trial of tMs matter, to hold a public hearing on approval of HI-BOR and standards for its use. Mr. FujiM testified that public hearings will be scheduled shortly for adoption of the 1994 Uniform Building Code, including consideration of inorgamc boron utilization. That would appear to be the appropriate forum to determine the suitability of inorgamc boron. Should tMs issue be left to tMs Court, there will not be another grace period after tMs Court rules.

CONCLUSION

For the foregoing reasons, the Court DENIES plaintiffs motion for preliminary injunction.
IT IS SO ORDERED.

. In a proposed state court complaint sent to defendant in January 1995, Conrad alleged that its principal place of business was in Honolulu, Hawaii. See Opposition, Exh. H, Complaint at ¶ 1. Conrad now alleges in its federal court complaint that its principal place of business is in North Bend, Oregon. Defendant has not raised any issue of lack of diversity jurisdiction.

. HI-BOR is the trade name used in Hawaii for an inorganic boron-based wood preservative, also called "Tim-Bor” and DOT (disodium octaborate tetrahydrate), manufactured by U.S. Borax and Chemical Corporation, which is based in Los Angeles, California.

. By way of background, according to Fujiki’s expert Professor Emeritus Minoru Tamashiro of the University of Hawaii:
The primary reason for treating construction lumber in Hawaii is to protect it from the Formosan subterranean termite.... Most of [the] problems with wood treatments stem from the fact that most structural lumber used in Hawaii is Douglas fir heartwood[.] Most wood treatments have a difficult time penetrating Douglas fir heartwood.
Opposition, Exh. D at 2.

.H.R.S. § 91-1(4) provides:
"Rule” means each agency statement of general or particular applicability and future effect that implements, interprets, or prescribes law or policy, or describes the organization, procedure, or practice requirements of any agency. The term does not include regulations concerning only the internal management of an agency and not affecting private rights of or procedures available to the public, nor does the term include declaratory rulings issued pursuant to section 91-8, nor intra-agency memoranda.

. In September 1995, Conrad commissioned Eric Morgan of Architekton Ltd. to arrange two studies by TPI and Dr. Jeffrey Morrell’s laboratory at Oregon State University to test whether commercially available HI-BOR treated wood met the penetration and retention levels specified in Fujiki’s Approval. TPI and OSU each tested 40 boards purchased from two suppliers, designated "H” and "M.” TPI tested boards Hl-10 individually and boards HI 1-20 as a composite group. With respect to these boards, TPI did not find any, including the composite group, that reached 0.4 pounds per cubic foot (“pcf”). OSU tested Hl-20 individually and found that three of them (HO-5, 9 and 20) reached 0.4 pcf. Of the twenty boards designated "M,” TPI found none that reached 0.4 pcf, but OSU found 13 out of 20 reached 0.4 pcf.

. Morrell, an associate professor in OSU's Department of Forest Products, specializing in wood preservation, wood microbiology and mycology, states in his affidavit: "In my professional opinion, because of Hawaii’s environment and the prevalence of Formosan termites, Douglas-fir’s high susceptibility to Formosan termites, inadequate retention, variations in treatment quality and lack of adequate control following treatment, structures in Hawaii constructed from wood products treated with inorganic boron to the levels tested by OSU and TPI, or even to the retention levels required by the June 27, 1995, [Approval], will be in serious danger of suffering long-term, repeated attack by Formosan termites.” See Morrell Affid. at ¶ 25. Morrell also states that "comparing inorganic boron to CCA, CCA functions as an effective repellant, even at substandard treatment levels.... The same cannot be said for inorganic boron.” See Morrell Affid. at ¶ 13. Morrell similarly testified at the hearing.

.Dr. Preston, vice-president of technology for Chemical Specialties, Inc. ("CSI”), and others conducted a one year field test in Hilo of HI-BOR and other wood preservatives. According to Preston’s affidavit and testimony, the results of his test indicate that “even at very high levels of retention, DOT is ineffective in preventing attack by Formosan termites on Douglas-fir wood." See Preston Affid. at ¶ 15.
Mr. Fujiki testified at trial however that in light of certain criticisms of Dr. Preston’s test by Pro *753 fessors Tamashiro and Grace of the University of Hawaii, a substantial body of published research supporting the use of inorganic boron as a wood preservative, input from his staff and the Termite Treatment Advisory Committee, and favorable feedback from builders and others using HI-BOR, he found Dr. Preston’s study to be interesting but inconclusive evidence that HI-BOR is unsuitable for Hawaii. See Tamashiro Ltr. (Opposition, Exh. D) at 3 (professor emeritus of the College of Tropical Agriculture at the University of Hawaii; "|T|he design of the experiment was such that valid comparisons of treatments could not be made unless there were no variations in the experiment. Since there were only two replications, statistical analyses could not be used to set probabilities on the differences among the treatments. The lack of replications ... makes it difficult if not impossible to draw logical, objec-five conclusions.”); Grace Ltr. (Opposition, Exh. D) at 4 (associate professor of entomology at UH; "[A] new and subjective rating scale was used [in the Hilo study], and the results are described in terms of a fairly small number of individual pieces of wood.... [T]he report is certainly of interest ... but it is really more observational or anecdotal than a technical report at this point.”).
Neither Tamashiro nor Grace concludes that a boron-based preservative such as HI-BOR may not effectively be used in Hawaii. See Tamashiro Ltr. at 4 (no problem with any of the treatments “as long as it can be shown in valid objective experiments that the treatment can penetrate Douglas fir heartwood deep enough to protect it against the Formosan subterranean termite.”); Grace Ltr. at 2 (suggesting retention target of about 0.47 pcf for DOT).