921 P.2d 732

Timothy John BARABIN,
Plaintiff–Appellant,

v.

AIG HAWAI'I INSURANCE COMPANY, INC., a Hawai'i corporation, and American International Adjustment Company, Inc., a foreign corporation, Defendants–Appellees,

and

John Does 1–10, Doe Partnerships, Corporations and/or other entities 1–10, Defendants.

No. 18914.

Supreme Court of Hawai'i.

July 23, 1996.

David L. Turk and Michael R. Goodheart, on the briefs, Honolulu, for plaintiff-appellant.

Richard B. Miller, K. Rae McCorkle and Douglas K. Ushijima of McCorriston, Miho, Miller & Mukai, on the briefs, Honolulu, for defendants-appellees.

Before MOON, C.J., and KLEIN, LEVINSON, NAKAYAMA and RAMIL, JJ.

MOON, Chief Justice.

In this no-fault automobile insurance coverage case, plaintiff-appellant Timothy John Barabin appeals from the judgment of the First Circuit Court entered in favor of defendants-appellees AIG Hawai'i Insurance Company, Inc. (AIG) and American International Adjustment Company, Inc. (AIAC) [hereinafter, collectively, appellees]. On appeal, Barabin argues that the circuit court erred in granting summary judgment against him based on his noncompliance with a provision in a policy of no-fault automobile insurance issued to him by AIG, requiring him to submit to AIG's reasonable requests for an examination under oath (EUO) [hereinafter,

the EUO provision]. The circuit court granted summary judgment in favor of appellees after rejecting Barabin's argument that the EUO provision was unenforceable because it was not approved by the insurance commissioner. For the following reasons, we affirm.

## I. *BACKGROUND*

On October 22, 1993, while stopped on Olive Avenue in Wahiawā, a vehicle owned and driven by Barabin was rear-ended by another vehicle traveling at approximately five miles per hour. The damage to Barabin's vehicle was slight, and there was no damage to the other vehicle. Barabin's vehicle was insured under a policy of automobile insurance issued by AIG to Barabin [hereinafter, the policy], and the policy provided mandatory no-fault coverage in compliance with Hawaiʻi Revised Statutes (HRS) chapter 431.

Following the accident, Barabin sought and received chiropractic care and treatment for injuries allegedly arising out of the accident and submitted the bills for the treatment to AIAC, the claims adjusting branch of AIG, for payment under the no-fault coverage of the policy. AIAC paid $1,747.58 of Barabin's chiropractic bills.

By letter dated December 7, 1993, AIG requested Barabin submit to an EUO pursuant to Part F of the policy, which stated in pertinent part:

> We have no duty to provide any coverage under this policy unless there has been full compliance with the following duties:
>
> B.  A person seeking any coverage must:
>
> 1.  Submit, as often as we reasonably require:
>
> . . . .
>
> b.  to examination under oath and subscribe to the same.

In a letter dated December 20, 1993, Barabin refused to submit to AIG's request, contending that the EUO provision was unenforceable and void. On December 27, 1993, AIG made a second request for Barabin to submit to an EUO within three days, threatening denial of no-fault benefits for noncompliance. Barabin again refused, citing the

reasons stated in his December 20, 1993 letter.

Thereafter, on January 20, 1994, AIG issued a denial of no-fault payments in the amount of $4,665.58 for outstanding chiropractic bills. AIG advised Barabin that benefits were being denied because of "[n]oncompliance with requested sworn statement, as allowed and stated in Part F, Page 27, Section B[3] of [the] policy. . . ."

By complaint filed February 17, 1994 against appellees, Barabin sought damages for breach of contract, breach of the implied covenant of good faith and fair dealing, tortious breach of contract, violations of Hawaiʻi's Unfair Settlement Practices Act, HRS chapter 431, intentional infliction of emotional distress, negligence, and punitive damages.

Appellees answered the complaint and counterclaimed for declaratory relief, seeking a judicial determination that AIG was not obligated to pay any benefits to Barabin because of his failure to submit to an EUO. Appellees maintained that an EUO request constituted a condition precedent to coverage under the policy and that refusal to submit to such a request constituted a breach of the insured's duty to cooperate. Thereafter, appellees moved for summary judgment on their counterclaim, which the circuit court granted by order filed July 15, 1994. The order provided that:

> The Court finds that there is no genuine issue of material fact that the [EUO] provision in the insurance policy is a condition precedent to coverage, i.e., [AIG] has no obligation to pay any benefits under the policy because [Barabin] refused to submit to an [EUO]. Moreover, the Court finds, as a matter of law, that [Barabin's] refusal to submit to an [EUO] constitutes a material breach of the insurance policy. Consequently, [AIG was] relieved of [its] obligation to pay benefits under the policy. Thus, [AIG's] termination of no-fault coverage to [Barabin] was proper.

Barabin subsequently moved for certification of the circuit court's order granting summary judgment on appellees' counterclaim pursuant to Hawaiʻi Rules of Civil Procedure (HRCP) Rule 54(b), which motion was denied. Armed with the summary judgment in

its favor, appellees moved to dismiss, or, in the alternative, for summary judgment on, Barabin's original complaint, which motion was granted.[1] Judgment was subsequently entered in favor of appellees on April 4, 1995, and this timely appeal followed.

## II. STANDARD OF REVIEW

It is well settled that:

On appeal, an order of summary judgment is reviewed under the same standard applied by the circuit courts. Summary judgment is proper where the moving party demonstrates that there are no genuine issues of material fact and it is entitled to a judgment as a matter of law. In other words, summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law.

*Harris v. DeSoto,* 80 Hawai'i 425, 431, 911 P.2d 60, 66 (1996) (citation omitted).

## III. DISCUSSION

A. *The Circuit Court Correctly Rejected Barabin's Argument that the Policy Provision Requiring the Insured's Submission to the Insurer's Request for an EUO Was Unenforceable and Void.*

1. *The Plain Language of the Applicable Statutes and Administrative Rules do not Require that Insurers Seek the Insurance Commissioner's Approval Prior to the Implementation of Every New Policy Provision the Insurer Seeks to Place in its Policy.*

Barabin's principal argument on appeal is that the circuit court erred in granting summary judgment in favor of appellees on appellees' counterclaim based on his non-compliance with the EUO provision because the EUO provision was not approved by the insurance commissioner and is therefore void and unenforceable. We disagree.

Relying on the well-established principle that, "[w]hen the terms of an insurance contract are in conflict with statutory language, the statute must take precedence over the terms of the contract[,]" *See Dawes v. First Ins. Co. of Hawai'i, Ltd.,* 77 Hawai'i 117, 122, 883 P.2d 38, 43, *reconsideration denied,* 77 Hawai'i 489, 889 P.2d 66 (1994) and cases cited therein, Barabin argues that Hawai'i Administrative Rules [HAR] § 16–23–60, promulgated by the insurance commissioner pursuant HRS § 431:10C–214 (1993), requires that the insurance commissioner approve all provisions that an insurer seeks to introduce into a policy of motor vehicle insurance covered by the strictures of HRS chapter 431.

HRS § 431:10C–214 provides that:

In order to carry out the provisions and fulfill the purpose of this article, the commissioner shall:

. . . .

(2) Adopt, amend and repeal such rules, pursuant to chapter 91, as the commissioner deems necessary to carrying out and fulfilling the purposes of this article, and to establishing standards for the prompt, fair and equitable disposition of all claims arising out of motor vehicle accidents[.]

HAR § 16–23–60 in turn provides that:

*No-fault policy endorsements.* Any policy issued or renewed on or after September 1, 1974, shall provide the coverage required of a no-fault policy in accordance with chapter 431, HRS, and administrative rules as amended from time to time. The endorsement as drafted by the insurer shall be *subject to* approval by the commissioner. The commissioner may require a certification from the insurer that, to the best of the certifier's knowledge and belief, such form meets the requirements of all applicable Hawaii laws and rules.

The endorsement may provide that an eligible injured person shall submit to medical or related examination by physicians selected by, or acceptable to, the insurer when, and as often as, the insurer may reasonably require. Notice of the

---

1. The propriety of this order is not at issue in this appeal.

medical or related examination shall include a list of three physicians and a request that the advice of the eligible injured person's treating physician be sought in choosing the physician to perform the medical or related examination. An eligible injured person may be required to submit, at the insurer's expense, to a medical or related examination in a county other that the county in which the eligible injured person resides.

(Emphasis added.)

Barabin specifically argues that, pursuant to HRS § 431:10C–214 and HAR § 16–23–60, because neither the legislature nor the insurance commissioner approved a provision for an EUO, AIG's EUO provision is unenforceable. We disagree with Barabin's reading of HRS § 431:10C–214 and HAR § 16–23–60.

The plain language of HRS § 431:10C–214 charges the commissioner with the responsibility and duty to adopt, amend, and repeal administrative rules to carry out the purposes of the insurance code. HAR § 16–23–60, promulgated pursuant to the authority granted to the commissioner under HRS § 431:10C–214, merely requires that all policies of automobile insurance must provide no-fault coverage as required by HRS chapter 431 and that the endorsement drafted by the insurer shall be *subject to* approval by the commissioner. HAR § 16–23–60 does not require that the insurance commissioner *actually* approve every provision of every endorsement from every insurance carrier in the state before any provisions may be incorporated into the carrier's policy.

Barabin further argues that, because HAR § 16–23–60 specifically provides that a no-fault insurance endorsement may require an eligible injured person to submit to a medical or related examination by physicians selected by the insured and does not specifically provide for an EUO, an EUO is not authorized by law.

The flaw in this reasoning is that, taking Barabin's interpretation to its logical conclusion, if the insurance commissioner were required to specifically provide for every permissible condition, HAR § 16–23–60 would effectively mandate that the insurance commissioner promulgate all insurance contracts verbatim. In other words, as appellees aptly note, HAR § 16–23–60 clearly contemplates that the insurer itself will draft the policy, and Barabin's interpretation instead would have the insurance commissioner promulgate the entire insurance policy.[2]

### 2. *The Vega Decision Does Not Stand For the Proposition that a Policy Provision Employing Any Means of Investigation Not Approved by the Insurance Commissioner is Unenforceable.*

Barabin next attempts to marshal support for his position from our decision in *Vega v. National Union Fire Insurance Co.*, 67 Haw. 148, 682 P.2d 73 (1984), arguing that *Vega* stands for the proposition that a policy provision authorizing a means of investigation not approved by the insurance commissioner is unenforceable. Vega was injured in an automobile accident. She sought and received no-fault benefits under a policy issued to her by National Union. After she had been receiving no-fault benefits for some time, AIAC, National Union's claims adjuster, investigated Vega's claims, and an AIAC representative eventually ordered Vega to submit to an independent medical examination (IME) with a physician of AIAC's choosing. Vega refused, arguing that the no-fault statute did not require the injured person to be subject to an insurance examination and that any such requirement found in the policy contravened the statute and was therefore unenforceable. Thereafter, AIAC informed Vega that her no-fault benefits were being "retroactively terminated." After Vega filed suit, the circuit court granted summary judgment in her favor, accepting Vega's argument that the legislature, by allowing a com-

---

**2.** Barabin also argues that because HAR § 16–201–66 allows "any interested person to petition the authority for the amendment, adoption or repeal of a rule[,]" and AIG did not do so, AIG does not now have any right to deviate from the provisions promulgated by the insurance commissioner. In view of our holding that the EUO provision is not void on the basis that it was not expressly approved by the commissioner, we similarly reject Barabin's argument here as being founded on the same flawed interpretation of HRS § 431:10C–214 and HAR § 16–23–60.

pulsory medical examination in other general insurance policies but excluding it from motor vehicle insurance, intended that such examinations should not be allowed under no-fault policies.

On appeal, we held that the IME provision was void because the insurance commissioner did not comply with HRS chapter 91 when promulgating the administrative rule permitting the IME provision. We noted:

> Although § 16–23–60 of the promulgated rules enabled the Commissioner to prescribe endorsements, it by no means gave him "*carte blanche* ... [to] sidestep the independent requirements" of HRS Chapter 91. *Aguiar v. Hawaii Housing Authority*, 55 Haw. 478, 493, 522 P.2d 1255, 1265 (1974). *See also Koolauloa Welfare Rights Group v. Chang*, 65 Haw. 341, 344, 652 P.2d 185, 187 (1982). A "rule" for purpose of the chapter includes "each agency statement of general or particular applicability and future effect that implements, interprets, or prescribes law or policy." Reading the pertinent part of the Basic No–Fault Endorsement with the foregoing definition in mind, we can only conclude it is a "rule" as defined by HRS § 91–1(4) and it should have been adopted as such in accord with the procedure set forth in HRS § 91–3.

67 Haw. at 155, 682 P.2d at 78 (footnote omitted).

Barabin argues that, pursuant to the above-quoted reasoning, the EUO provision in the policy at issue in the present case, like the IME provision in *Vega*, is invalid because the insurance commissioner did not approve the inclusion of the provision or properly promulgate a rule allowing the provision.

The infirmity in Barabin's reasoning is twofold. First, Barabin's position is functionally identical to the reasoning urged by Vega and employed by the circuit court in *Vega*, which reasoning we expressly declined to endorse. We noted:

> The circuit court based its declaration of invalidity on what was perceived as a mandate in the Hawaii Insurance Law, HRS Chapter 431, that the "required provision [in accident and sickness insurance policies] relative to physical examinations"

shall not "apply to or affect ... any policy of vehicle or liability insurance." HRS §§ 431–474 and 431–461(1); ... Inasmuch as the policy clause at issue compels an insured person seeking no-fault benefits to submit to medical examinations as directed by the insurer, we would agree the foregoing sections of the Insurance Code appear on cursory examination to control the situation. Yet we deem it unwise to endorse the circuit court's holding, for the profound changes wrought in the system of reparations for harm resulting from vehicular accidents since the particular Code provisions were adopted in 1955 render their applicability in the situation at hand more than doubtful.

*Id.* at 152–53, 682 P.2d at 76 (footnotes omitted).

Second, the invalidation of the IME provision in *Vega* was not based on the fact that the IME provision was repugnant to the statutory insurance scheme or the administrative rules. The *Vega* court expressly noted that, "in view of our ruling ... that the [IME] provision was not validly adopted as a 'rule' pursuant to the Administrative Procedure Act, we do not decide here whether the imposition of such a condition is inconsistent with the purpose and policy of the No–Fault Insurance Law." *Id.* at 150–51 n. 3, 682 P.2d at 75 n. 3. The IME provision was completely consistent with the basic no-fault endorsement promulgated by the insurance commissioner which allowed IMEs. *Vega*, therefore, does not stand for the proposition that a policy provision authorizing a means of investigation not approved by the insurance commissioner is unenforceable and does not lend any support to Barabin's position.

Moreover, subsequent to *Vega*, we have rejected the logic that only legislatively-promulgated exclusions are valid. In *Kang v. State Farm Mutual Automobile Insurance Co.*, 72 Haw. 251, 815 P.2d 1020 (1991), we held that a provision in a policy of automobile insurance that precluded the recovery of both uninsured and underinsured motorist benefits was valid, despite the fact that the exclusion was not expressly authorized by HRS chapter 431. In upholding the exclu-

sion, we noted that "although the statute lacks specific terms permitting the exclusion, we find it consistent with the legislative purpose[,]" *id.* at 260–61, 815 P.2d at 1024 (emphasis deleted and citation omitted), and "in none of the cases in which this court has rejected a challenged policy exclusion has the decision been based upon a blanket prohibition against any exclusion not specifically enumerated by the legislature." *Id.* at 258, 815 P.2d at 1023.

### B. *The Language of the Policy Regarding the EUO Provision Is Clear and Unambiguous.*

■ Barabin next argues that the language of the policy regarding the EUO provision is ambiguous because the EUO provision is located outside the section of the policy dealing with no-fault coverage. In the present case, no-fault coverage is found in part E of the policy, which provides in pertinent part that "[t]he Definitions and General Provisions of the policy apply unless modified under this Part." The definitions and general provisions appear in different portions of the policy. The general provisions appear in part G of the policy. Barabin therefore contends that, because the EUO requirement appears in part F of the policy, which is entitled "Duties After an Accident or Loss" and which is not expressly incorporated into part E of the policy dealing with no-fault coverage, the policy is ambiguous regarding the effect of the EUO provision and cannot serve as the basis for precluding no-fault coverage.

It is well settled that:

An insurance contract must be construed according to the *entirety* of its terms and conditions under the policy. HRS § 431:10–237 [ (1993)[3]]; *see also Smith v. New England Mutual Life Ins. Co.,* 72 Haw. 531, 534, 827 P.2d 635, 636 (1992). Because insurance contracts are contracts of adhesion, they must be construed liberally in favor of the insured and all ambiguities are resolved against the

insurer. *Sturla, Inc. v. Fireman's Fund Ins. Co.,* 67 Haw. 203, 209, 684 P.2d 960, 964 (1984). However, this rule does not automatically apply whenever an insured and insurer disagree over the interpretation of the policy provisions and an assertion of ambiguity arises. *Id.* Furthermore, a complex provision and/or policy does not in itself create ambiguity. Ambiguity exists "'only when the contract taken as a whole, is reasonably subject to differing interpretation.'" *Id.* (citations omitted); *see also Fortune v. Wong,* 68 Haw. 1, 10–11, 702 P.2d 299, 306 (1985). "A court must 'respect the plain terms of the policy and not create ambiguity where none exists.'" *Smith,* 72 Haw. at 537, 827 P.2d at 638 (citation omitted).

*State Farm Mut. Auto. Ins. Co. v. Fermahin,* 73 Haw. 552, 556–57, 836 P.2d 1074, 1077 (1992) (emphasis added).

As previously noted, the policy clearly states that AIG has "no duty to provide *any coverage under this policy* unless there has been full compliance with the following duties: ... [s]ubmit, as often as [AIG] reasonably require[s]: ... to examination under oath[.]" This language is clear and unambiguous and, by its own terms, applies to all coverages under the policy.

Moreover, as appellees note, courts in other jurisdictions have declined to hold identical or similar language as ambiguous. *See, e.g., Globe Indemnity Co. v. Superior Court,* 6 Cal.App.4th 725, 8 Cal.Rptr.2d 251, 254 (1992) ("Words in a contract are interpreted in their ordinary and popular sense.... ["Examination"] is commonly understood to mean interrogation with questions and answers." (Citation omitted.)); *Prince v. Farmers Ins. Co.,* 790 F.Supp. 263, 266 (W.D.Okla.) ("[The EUO provision] is clear and unambiguous. Also clear and unambiguous is the provision that the insured must fully comply with the terms of the policy before suit may be maintained against the insurer."), *rev'd on other grounds,* 982 F.2d 529 (10th Cir.1992); *Wood v. Allstate Ins.*

---

3. HRS § 431:10–237 provides:

Every insurance contract shall be construed according to the entirety of its terms and conditions as set forth in the policy, and as amplified, extended, restricted, or modified by any rider, endorsement or application attached to and made a part of the policy.

*Co.,* 815 F.Supp. 1185, 1193 (N.D.Ind.1993) ("[T]he court agrees that the provisions [including the EUO provision] are clear and unambiguous. Under the contract, the insured must fully comply with the terms of the policy before suit may be maintained against the insurer."), *rev'd on other grounds,* 21 F.3d 741 (7th Cir.1994). *See also generally* 8 J. Appleman & J. Appleman, *Insurance Law & Practice,* § 4771 at 213 (1981) ("[C]ooperation clauses are subjected to the common and ordinary meaning of the language contained therein, and not to a strained meaning or technical construction." (Footnote omitted.)).

Based on the foregoing, we hold that the EUO provision is clear and unambiguous.

### C. *No Issues of Material Fact Remain Regarding Appellees' Counterclaim.*

Barabin next urges that, even in the event that we do not reverse the judgment of the circuit court, we should remand the case for further proceedings because a triable issue of fact exists. Barabin asserts that the affidavit of Robert C. Bione, who was formerly employed by AIG from 1977 until 1985, which provides that, during Bione's tenure with AIG, Bione believed it was "improper to attempt to enforce any policy provision which required a precondition for an insured to obtain No–Fault benefits if that precondition was not explicitly approved by regulations properly adopted by the Insurance Commissioner," raises an issue of fact precluding the grant of summary judgment.

In the context of the present appeal, however, Bione's affidavit is irrelevant. The sole issue on appeal is one of law: whether, in view of the applicable statutes and administrative rules, the EUO provision in the policy is enforceable. Bione's affidavit, reflecting his personal opinion, speaks at most to AIG's corporate practices ten years ago and lends no assistance to our interpretation of the statutes and administrative rules governing the propriety and enforceability of the EUO provision.

### D. *AIG Has No Duty to Pay Benefits to Barabin Because Barabin Breached His Contractual Duty to Cooperate.*

In view of our holdings that: (1) the EUO provision is valid and enforceable despite not having been promulgated by the insurance commissioner; (2) the EUO provision is clear and unambiguous; and (3) no other issue of material fact exists, we hold that AIG has no duty to pay benefits to Barabin because, by failing to submit to AIG's request for an EUO, Barabin breached his duty to cooperate under the policy, a condition precedent to AIG's obligation to pay benefits.

## IV. *CONCLUSION*

In view of the foregoing, the judgment of the circuit court is affirmed. On the briefs: